## ED HERD v. THE STATE.

### No. 2466. Decided March 25, 1902.

**1.—Dying Declarations—Supplementing Them by Other Oral Statements.**

When defendant has introduced deceased's dying declarations reduced to writing, but which does not contain all the statements made by deceased, he can supplement the written statement, when a proper predicate has been laid, by other and additional testimony indicating either that deceased made statements not embodied in the written declaration, or that he made other statements as dying declarations contradictory of a written statement whether said statements were made contemporaneously or subsequent to the written declaration. Henderson, J., dissenting.

**2.—Impeaching Testimony—Limiting in Charge.**

Testimony introduced alone for impeaching purposes, if calculated to affect defendant's rights injuriously, should always be limited by the court in its charge to the purpose for which it was admitted.

Appeal from the District Court of Johnson, on change of venue from Bosque County. Tried below before Hon. W. Poindexter.

Appeal from a conviction of manslaughter; penalty, four years imprisonment in the penitentiary.

Appellant was charged by the indictment with murder of George Farabee, on the 30th day of May, 1901, by shooting him with a pistol.

The following statement is taken from the brief of appellant:

Appellant and deceased quarreled in the town of Meridian in Bosque County, on the 30th day of May, 1901, over a small account, and a settlement had. On the following day a picnic was in progress at Walnut Springs in the same county. Defendant and deceased both attended, defendant leaving Meridian shortly after noon on the day of the killing. The first meeting between appellant and deceased at Walnut Springs occurred at a chile stand on the picnic grounds, near which appellant was seated. Deceased approached him, renewed the quarrel of the day before, placed himself in a fighting attitude, cursed, and applied to defendant violently abusive epithets. Defendant returned some of these compliments, but left the chile stand first, saying he wanted no trouble. A few minutes afterwards deceased again approached him, repeating the epithets. Defendant retreated, deceased advancing on him, and defendant fired twice with a pistol, one ball taking effect, resulting in death. Deceased was unarmed. Defendant pleaded not guilty, his de-

fense being based on reasonable apprehension of death or serious bodily injury. The shooting occurred about 5 p. m., and deceased died about 1 o'clock p. m. the next day. Deceased made a statement to the attending physicians and others about one hour after the shooting as to what transpired at the time of the shooting. At about 5 a. m. on the following day, or nearly twelve hours after the shooting, he made another statement. Many eyewitnesses to the tragedy, as well as other witnesses, were examined for the State and defendant, Miss Nellie Shuford being one of the most material.

The State offered in evidence the dying declarations of deceased, made about twelve hours after the shooting, testified to by A. A. Lumpkin and Dr. A. L. Lumpkin. These declarations showed an unprovoked homicide. The defendant offered Dr. W. C. Jones as a witness to show statements made by deceased shortly after the difficulty (about one hour). These statements were at great and material variance with the declarations offered by the State; contradicted said declarations, and gave more in detail the incidents connected with the shooting, corroborated the defendant as to the language used, and contradicted many of the State's witnesses. The court excluded this testimony.

*W. M. Knight, J. A. Gillette, W. F. Schenck,* and *Ramsey & Odell,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of manslaughter, and his punishment assessed at confinement in the penitentiary for a term of four years.

Appellant complains that the court erred in excluding the testimony of Dr. W. C. Jones as to the statements made by deceased relative to the difficulty between deceased and defendant. It appears from the bill of exceptions that appellant offered a written statement showing the dying declarations of deceased. Thereupon appellant stated to the court that the written dying declaration did not contain all that was said by deceased at the time said statement was reduced to writing and signed by deceased; that appellant could and would have proved by Dr. Jones the following as a part of the statement actually made by deceased at the time referred to, to wit: "I think I asked deceased the reason of the difficulty, and he said they had been in some trouble the day before about an account. He said that on the ground [meaning the picnic ground] he had raised the difficulty. That he said to Mr. Herd [defendant] that the manner in which he treated him the day before was a dirty trick, and one question led to the declaration that he [deceased] called Mr. Herd, there on the ground at the time, a 'damn dirty son of a bitch' and a 'cock-sucking son of a bitch.' I warned

him of the nature of the language, and he [Farabee, deceased] said it was the truth. I asked him what then took place, and he said, 'Herd shot me.' The written statement I saw did not contain all that he [Farabee] said. If this statement here in evidence is the one, it is not full enough. It don't contain that dirty language, and it is not full enough. Dr. Russell wrote the statement down, and I suppose did not hear that, or else did not care to write it down. I suppose Russell's reasons for not writing it down were on account of its extreme obscenity." The written statement, as shown by the record, is as follows, to wit: "Walnut Springs, Texas, May 30, 1901. Ed Herd shot me. I had nothing to shoot with. We were not on good terms. He shot me because I told him he was dirty. I did not offer to hit him. After he shot me, he shot again. I was standing face to face when he shot, and the first shot took effect, and then he shot at me again. The difficulty occurred about a check, and he said that the check wasn't enough, and I told him I didn't owe him the $6, but he said I did. George Farabee told to-day that he was a dirty son of a bitch, and then the shooting commenced. The above statement is true and correct. [Signed] George Farabee." The bill of exceptions shows that the declarations that were not reduced to writing, as stated above, were made contemporaneously with the written declaration; and there is no question but that the proper predicate was laid for the introduction of both the written and oral declarations of deceased. The State objected to the testimony of Dr. Jones for the reason that the statement about which he proposed to testify was reduced to writing, read over to the witness, signed and pronounced correct by him, and signed by witnesses, and defendant has introduced said statement in evidence to the jury; and because defendant is seeking to destroy and add to a written statement covering the subject matter about which this witness proposed to testify; and because it appears from said witness that deceased at the time he made said statement was not conscious of approaching death; and because said statement of deceased was elicited by questions propounded by Dr. Jones. The court sustained the objections, and appends the following explanation to the bill: "I sustained the objections of the State to this evidence. Even if it was made to appear that deceased was conscious of approaching death, and believed he was going to die, this evidence would not be admissible, for the reason that defendant had introduced in evidence a written statement of deceased, taken down at the time, and which is admitted to be the statement about which Dr. Jones proposed to testify. This statement was read over to deceased, and signed by him, and witnessed as a correct statement; and, under the authorities, I am inclined to the opinion that the written statement is to be taken as correct, and the presumption is that verbal contentions of what deceased said at that time are not admissible to change the written statement.' We think the court erred in refusing to permit the introduction of the testimony of Dr. Jones. If a dying declara-

tion when made is reduced to writing, it is not competent for the prosecution to prove it by parol evidence without accounting for the non-production of the writing. But if deceased made the declaration on several occasions, the fact that it was reduced to writing on one occasion does not preclude parol evidence of the unwritten declarations on the other occasions. Krebs v. State, 8 Texas Crim. App., 1. Furthermore it is competent for defendant on trial for murder to impeach the dying declaration of deceased, inculpating him as the slayer, by proving the statement made by deceased contradictory of his dying declarations; and it is reversible error for the court to refuse to permit such impeaching testimony to be introduced. Felder v. State, 23 Texas Crim. App., 477. For a discussion of a similar question, see Drake v. State, 25 Texas Crim. App., 293. See also Underhill, Crim. Ev., sec. 112. It follows that, if appellant introduced a written statement which does not contain all of the dying declarations of deceased, he can supplement said statement by other and additional testimony, where the proper predicate is made, indicating either that deceased made statements not embodied in the written declaration, or that he made other statements as dying declarations contradictory of the written statement. We understand from the bill of exceptions here under discussion that appellant was merely attempting to supplement the written declaration by declarations not reduced to writing. This is admissible. As indicated above, if the State is relying upon the written dying declaration, it must first introduce said statement, or account for its absence, before it would be permitted to introduce oral testimony of the dying declaration. We take it that this rule would apply to defendant as well as to the State. We know of no law or decision that would confine either the State or defendant to the written dying declaration, where other and different statements are made contemporaneously with the written declaration, or made subsequent to the written declaration. Therefore we hold that the learned judge erred in excluding this testimony.

Bills of exceptions numbers 2 and 3 insist that the court erred in failing to limit certain testimony offered by the State which was intended to impeach the testimony of defendant's witnesses. In view of another trial, we deem it only necessary to say that where this testimony is introduced for but one purpose (i. e., for the purpose of impeachment), and it is calculated to injuriously affect defendant's rights in the trial unless limited to said purpose, the court should so limit the same. This we understand to be the general rule in reference to impeaching testimony.

For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

HENDERSON, JUDGE (dissenting).—The majority opinion holds that, where dying declarations are properly reduced to writing and in-

troduced in evidence, parol evidence of such dying declarations made at the same time can be introduced, or that the written declarations may be supplemented by other expressions or declarations of the party made at the same time, and which were not included in the written declaration. And in support of this a majority of the court cite Felder v. State, 23 Texas Criminal Appeals, 477, and Drake v. State, 25 Texas Criminal Appeals, 293. I do not believe these cases support the doctrine announced. In Felder's case it was held the written declaration could be impeached by showing that appellant made a statement at variance with said written declaration. While neither the opinion nor the statement of facts shows when the written declaration was made, it does show that the contradictory statement proposed to be introduced was made some twenty minutes after deceased was shot. Deceased lived some five or six months thereafter, and evidently the written declaration was not contemporaneous with the contradictory declaration. In Drake's case the question was as to the admissibility of the written declaration. It was held not admissible, because the declarant subsequently stated "that it was substantially correct, but that there were some immaterial alterations in his evidence he would like to make." But I understand that case to concede that the written declaration is the best evidence. In Krebs v. State, 8 Texas Criminal Appeals, 1, I understand the same rule to be announced. In that case, however, parol declarations were admitted; the court holding that the record did not affirmatively show that the dying declarations had ever been reduced to writing. The court distinctly say: "To have made the objection tenable, defendant should have established that the declarations had in fact been reduced to writing and signed by the declarant, in which event parol evidence would have been inadmissible, unless the prosecution had shown that it was not in the power of the State to produce the writing." The learned judge then quotes Wharton and Greenleaf on this subject with approval. Mr. Wharton says, "If the declaration of the deceased at the time of his making it be reduced into writing, the written document must be given in evidence, and no parol testimony respecting its contents can be admitted." Whart. Hom., sec. 766. Mr. Heard, in his valuable note to Rex v. John, 2 Heard, Leading Criminal Cases, 405, 406, cites a number of authorities on this subject. In Rex v. Reason, 1 Strange, 499, where it appeared that the declaration had been reduced to writing, a prior and subsequent declaration, though made on the same day was held inadmissible. See Rex v. Gay, 7 Car. & P., 230; State v. Ferguson, 2 Hill (S. C.), 619, 27 Am. Dec., 412; Beets v. State, Meigs, 106. However, this would not be in accord with our decisions. See Hopkins v. State (Texas Criminal Appeals), 64 Southwestern Reporter, 933, which permits other declarations made at another time, although it is shown that the dying declarations made on one occasion were reduced to writing. I think the doctrine is well settled, both at common law and in this State, that, where dying declarations have been reduced to writing and signed by the party, it is

not competent to introduce by parol all the declarant may have stated at the same time, and in connection with said dying declaration. While there is no statute requiring such declarations to be reduced to writing, still, where they have been so reduced, under proper formalities, it constitutes the best evidence of what the declarant stated at the time. Of course, I am not now discussing the question of fraud, as in such case the declaration would be excluded on that account. Nor does this view militate against the introduction of declarations made at some other time, which, as we have seen, are admissible in evidence.