## R. D. ANDERSON v. THE STATE.

### No. 4915.   Decided April 10, 1918.

**1.—Murder—Declarations of Third Parties—Evidence—Hearsay.**

Upon trial of murder and a conviction of manslaughter, the court should not have admitted in evidence the testimony of the wife of the deceased to the effect that on the morning the homicide occurred, after it took place, some distance from the scene thereof, in the absence of the defendant, she had a conversation with defendant's witness, in which he told her that defendant shot deceased, and that they tried to get him not to do it, this was not res gestae and purely hearsay, and could not be used for impeachment purposes as no predicate was laid therefor.

**2.—Same—Evidence—Prior Difficulty—Leading Questions.**

Where, upon trial of murder, a witness for the State was permitted to testify to a previous altercation between defendant and deceased and failed to recount his former statements, in which he claimed that immediately after the prior encounter, defendant had made threats to kill deceased, the court should not have permitted leading questions by the State's attorneys with reference to such statement; nor should the trial judge have taken witness in hand and asked him about such statement, reading from the paper in which it was made.

**3.—Same—Rule Stated—Leading Questions—Reluctant Witness.**

While it has often been held that the trial judge may permit leading questions to be asked of a hostile, reluctant, or unwilling witness, this discretion should not be extended to embrace an instance where a full-grown man, not suffering from any shown disability, who claimed to be an eyewitness of the transaction, etc., became confused and excited.

**4.—Same—Leading Questions—Evidence.**

Where the effect of the proceedings was to get before the jury the fact that the witness, soon after the homicide, signed a' written .statement, in which ne had asserted that defendant had made serious threats against the life of deceased, and to induce him by leading questions, prompted by a written statement, which the witness had made before to testify that these threats were in fact made, and who testified for the State in his examination-in-chief that he had seen the previous difficulty between the parties, but remembered no threats,

the same was reversible error. Following Spangler v. State, 41 Texas Crim. Rep., 424, and other cases.

### 5.—Same—Remarks by Judge—Rule Stated.

The law contemplates that the trial judge shall maintain an attitude of impartiality throughout the trial, and it has been often held that his views or impressions of the weight of the evidence, or upon the issues in the case may be conveyed to the jury as effectively by other means as by a charge of the court, and where the trial judge read from the written statement of the witness in the hearing of the jury to prove by him that he had previously made the statement and that it stated the facts, the same was reversible error. Following Kirk v. State, 35 Texas Crim. Rep., 224, and other cases.

### 6.—Same—Statutes Construed—Rule Stated—Function of Judge and Jury.

The statutes provide that the trial judge shall not express his opinion or comment upon the weight of the evidence or its bearing on the case, or make any remark calculated to give the jury his opinion of the case, and the jury are the exclusive judges of the weight of the testimony and of the credibility of the witnesses. Following Simmons v. State, 55 Texas Crim. Rep., 441, and other cases.

Appeal from the District Court of Taylor. Tried below before the Hon. Joe Burkett.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Kirby & King,* for appellant.—Cited Sessions v. State, 197 S. W. Rep., 718; Messenger v. State, 198 S. W. Rep., 330.

*E. B. Hendricks,* Assistant Attorney General, for the State.

MORROW, JUDGE.—Appellant under indictment for murder was convicted of manslaughter.

According to the State's theory appellant shot and killed deceased under circumstances which constituted murder. Appellant claims to have acted in self-defense. One of his eyewitnesses was his stepson, Emmett Burns. This witness was present and testified in substance that deceased came to the restaurant where he was killed armed with a pistol; that appellant at the time immediately before the shooting was behind a partition door-jamb with his head sticking out and with a target rifle in his hand which was pointed down toward the floor; that after some words were exchanged deceased fired two shots at appellant while he was in the position described, and that appellant fired one shot, which witness did not see but heard, he at the time being in the act of leaving the house. Appellant's testimony was substantially to the same effect and he was corroborated by some other testimony.

The wife of deceased, introduced as a witness for the State, testified that on the morning the homicide occurred, after it took place some distance from the scene thereof, in the absence of appellant she had a conversation with the witness Burns in which he told her that appellant

shot deceased, and further said, "That we tried to get him not to do it." It is not claimed that this is res gestae. The court in explaining the bill says: "Defendant claimed self-defense, and Emmett Burns' testimony also tended to refute that theory." The objection that the evidence is hearsay is, we think, well taken. It might have been used to impeach the witness Burns if the predicate therefor had been laid. This, however, was not done. If it had been used as impeaching testimony the court would have been required to limit it to that purpose, namely, as bearing upon the credibility of Burns. It appears to have been used as original testimony, contradicting the testimony of Burns and the theory of self-defense. The testimony of Burns was not only material upon this issue and in conflict with the statement proved and attributed to him, but it tended to contradict other witnesses who supported the appellant's theory. We regard its admission as prejudicial error.

Some hours before the homicide took place the deceased and appellant had a quarrel and were about to fight, and were separated by friends, among them a witness by the name of Thomas. This witness was a negro man and brother-in-law of deceased. He was not present at the time the homicide took place. He was called by the State to relate the incidents of the prior encounter. It seems that some time after the homicide, and before the trial, this witness had made a statement in writing in the presence of one described as Mr. Graham, in which writing he detailed his version of the first difficulty; and it appears that in this writing there were statements of the witness in which he claimed that immediately after the prior encounter appellant had made threats to kill deceased. In giving his testimony he failed to recount this fact; that is, he failed to testify to the threats and said in effect that he recollected nothing that was said by the appellant on the occasion mentioned. The State's attorney and the trial judge, on his direct examination, interrogated him, asking him certain leading questions, after proving by him that he had made the written statement mentioned. As we understand, the statement was produced during this examination, which was in the presence of the jury, and alternately the district attorney and the judge used it in interrogating the witness. The bill states that the writing was read but it does not appear copied in the bill or the statement of facts. Responding to this method of examination, and having his memory thus refreshed, the witness said that he did remember some things that the appellant said, among others, that he begged for his gun and that when it was refused him, said he had another gun at home and that Cummings, deceased, had to go home and that he, appellant, would get him. He said to Cummings, "I will get you." After the cross-examination by appellant's counsel, and after State's counsel had conducted his redirect examination, the bill states that the following took place: "The court trying the case again took the witness from the district attorney and read from a paper held in his hand, and asked witness if he remembered this statement: 'Before he left the house he said he would kill Cummings if it was the last thing he ever done.'

All of this in the presence of the jury. And the court thereupon asked the witness if he had made this statement to Mr. Graham, and the witness says: 'I remember that, I am sure that was said.' The court then read as follows from the paper: 'When he came back he went in behind us and he still said he was going to kill Cummings.' The court asked the witness if that was so and the witness replied, 'That is so.' And the witness thereupon further testified in response to the court: 'I did not testify to that while ago because I did not think of it. I think that was everything that was said, that is all I can remember. That is why I did not tell you any more, I just told you all I could remember.' "

Various objections are urged to this proceeding. The court qualifies the bill with the statement that the witness appeared to be confused and excited and did not seem to understand many of the simplest questions. It has often been declared within the sound discretion of the trial judge to permit leading questions to be asked to a hostile, unwilling or reluctant witness. Mann v. State, 44 Texas, 642, and other cases in Branch's Ann. P. C., sec. 158. This discretion has been held to cover a case in which a child laboring under excitement was asked such questions. Campbell v. State, 62 Texas Crim. Rep., 561. There doubtless would arise other instances in which the application of the principle would be justified. In the present case the witness was a grown-up man, was related to the deceased and made a written statement in advance which apparently was voluntarily made and which was in possession of the State. He does not, therefore, seem to have been hostile, unwilling or reluctant. It is doubtful whether the rule should be enlarged to embrace an instance where a full-grown man, not suffering from any shown disability, who claimed that he was an eyewitness to a recent transaction, and who was unable to relate the incidents upon the trial in the same manner or in the same substance that he had previously related them and who in his efforts to do so became confused and excited. If it be conceded that the circumstances were such as to authorize leading questions, the question occurs whether in permitting the proceeding that is disclosed by the record in the present instance, the court was exercising sound judicial discretion. The effect of the proceeding was to get before the jury the fact that the witness soon after the homicide signed a written statement in which he had asserted that appellant had made serious threats against the life of deceased, and to induce him by leading questions, prompted by this written statement, to testify that these threats were in fact made. As disclosed in the bill, the effect of his testimony, before this proceeding, was that he had seen the previous difficulty but remembered no threats.

In Spangler v. State, 41 Texas Crim. Rep., 424, the court, dealing with a similar question, used the following language: "Charley Spangler was a witness for the State, and he had testified to no fact detrimental to the State, and the State would not have been authorized to contradict him by showing that he had testified to an additional fact

before the grand jury. It could only contradict him where he had testified to some affirmative fact detrimental to the State, and then only where the attorney for the State had been taken by surprise at the testimony of his own witness. So far as we are able to discover from the bill here, the witness did not remember the additional fact; and the State was permitted, over the objections of appellant, to parade the witness' testimony, taken in the grand jury room, before the petit jury trying the case." This case was reversed on other grounds, the court condemning the practice, but stating that inasmuch as the witness did give the testimony when his memory was refreshed in the manner stated, it would not be held reversible.

In Brown's case, 42 Texas Crim. Rep., 176, the court expressed itself with reference to a similar question, as follows: "The examination of the witness Melvin Cuds was unauthorized. Testimony taken before the grand jury is admissible solely where the truth or falsity of the witness is in question. In Spangler's case, 41 Texas Crim. Rep., 424, while we held it was not reversible error to use the grand jury testimony for the purpose of refreshing a witness' recollection, still the method pursued in that case was improper. In this case, as is well said by counsel in their brief: 'If the State used the paper for the purpose of impeaching its own witness, this was improper. If counsel used the paper for the purpose of testing the memory of the witness with a view of impeaching his testimony, this was improper. If he used the paper to intimidate the witness, this was improper. If he used the paper as the basis of the cross-examination of his own witness, yet refused the use of the paper to the defendant and his counsel, this was improper.' Evidently the paper in question was used for some or all of these purposes."

Both of these cases relate to testimony taken before the grand jury to the use of which there was a particular objection. See Wisdom v. State, 42 Texas Crim. Rep., 579. However, in so far as they illustrate the dealing with a witness by the party offering and bringing before the jury the statements made out of court corroborating, where he is not impeached, and the use of such statements to contradict or intimidate him where he has not given damaging testimony against the party offering it, the principle involved is not distinguishable from that involved in the case mentioned.

In Carter v. State, 75 Texas Crim. Rep., 110, 170 S. W. Rep., 739, the court says: "The State's counsel should never by his questions suggest an answer to a friendly witness. The law permits the trial judge to interrogate a witness under certain circumstances but the law forbids his making comments upon the weight of the evidence. In Vernon's C. C. P., p. 468, note 93, in the text, it is said: "A charge is erroneous which in any way, and to any degree, conveys to the jury the impression of the judge on any of the evidence," citing Gibbs v. State, 1 Texas Crim. App., 13, and other cases. The law contemplates that the trial judge shall maintain an attitude of impartiality throughout the trial, and it has been often held that his views or impressions of the weight of the

evidence or upon the issues in the case may be conveyed to the jury as effectively by other means as by charge of the court. This is illustrated by the opinion of this court written by Judge Hurt in Kirk v. State, 35 Texas Crim. Rep., 224; and in Lawson v. State, 32 S. W. Rep., 895; Reason v. State, 30 S. W. Rep., 780; Crook v. State, 27 Texas Crim. App., 198; Wilson v. State, 17 Texas Crim. App., 525; Simmons v. State, 55 Texas Crim. Rep., 441. The fact that the part taken by the court, whether or not inadvertently or with the best intentions, may have impressed the jury in regard to his views of the evidence, is none the less harmful.

In the present case it appears that after the cross-examination and after the prosecuting attorney had pursued the methods described in examining his own witness, the court read from the paper, which contained the witness' statements out of court, the following: "Before he left the house he said he would kill Cummings if it was the last thing he ever done." The judge then asked the witness if he had made that statement to Mr. Graham. From the same paper, the bill shows, he read in the presence of the jury the following: "When he came back he went in behind us and he still said he was going to kill Cummings." The court asked the witness if that was so and the witness replied that it was.

It is not unusual that a witness is allowed to examine a writing to refresh his memory; Branch's Ann. P. C., sec. 160; but that does not mean that a party may read to his own witness in the hearing of the jury his written statement made out of court, and prove by him that he made the statement and that it states the facts. This is subject to the criticism that it is a method of leading one's own witness and corroborating him before he is impeached by hearsay, in proving that he made the statement out of court.

The case of Sparks v. State, 59 Ala. Rep., was one in which, after the witness was excused by the State the defendant failing to cross-examine him, the presiding judge beckoned to the witness and had a whispered conversation with him. The court then asked the witness, who had testified to the reputation of one of the parties, if he knew of any circumstance illustrating the character of the defendant. The court held this proceeding erroneous, its holding based partly upon the inadmissibility of the evidence thus elicited, but to a great extent to its criticism of the act of the trial judge, saying: "We would hesitate to affirm any judgment of conviction, supported by evidence elicited from a witness, on an examination by the presiding judge, after a private inquiry of the witness, by the judge, as to his knowledge of the facts of the case. Especially, if as in this case, the witness had been examined in chief for the State, and the defendant had declined to cross-examine him, before the inquiries and examination of the judge. We do not impute, or intend to impute intentional impropriety to the presiding judge. We are compelled to deal with facts as they are presented by the record."

We have statutes providing that a trial judge shall not express his

opinion or comment upon the weight of the evidence or its bearing on the case or make any remark calculated to give the jury his opinion of the case. See Simmons v. State, 53 Texas Crim. Rep., 441, and the statutes referred to. In the State of Washington there is a constitutional provision to the same effect. The case of State v. Crotts, 60 Pac. Rep., 403, was a case of homicide in which the defense was self-defense. The court interrupted the interrogation of the witness and asked several leading questions tending to elicit from the witness facts favorable to the State, negativing the defendant's theory of self-defense. Reversing the case because of the impropriety of these proceedings, the court makes the following comment: "There are different ways by which a judge may comment upon the testimony, within the meaning of the Constitution referred to above. The object of the constitutional provision, doubtless, is to prevent the jury from being influenced by knowledge conveyed to it by the court of what the court's opinion is on the testimony submitted. The Constitution has made the jury the sole judge of the weight of the testimony and of the credibility of the witnesses, and it is a fact well and universally known by courts and practitioners that the ordinary juror is always anxious to obtain the opinion of the court on matters which are submitted to his discretion, and that such opinion, if known to the juror, had a great influence upon the final determination of the issues. This information can be conveyed as readily to the jury by leading questions asked of them, and the manner of the judge in asking such questions as by a direct comment upon the testimony in the charge to the jury."

In the instant case the eyewitness testified to circumstances of fact showing self-defense. The State relied mainly upon physical facts and circumstances to show that the homicide was an assassination or at least that it was not justifiable on the theory of self-defense. There was evidence that after the first difficulty between deceased and appellant, which occurred about 2 o'clock in the morning, during which appellant's pistol was taken away from him, that appellant had gotten possession of a target rifle with which he killed deceased, and that he had in the restaurant where deceased accosted him immediately before the homicide. To negative the theory of self-defense and show malice and premeditation it was important that the State should prove that after the previous difficulty appellant had threatened to kill deceased. The State was represented by a skillful and learned attorney, who, under the sanction of the court, had fully examined the State's witness in question. The conduct of the trial judge in entering into the examination, reading from the statement which the witness had previously made, the very fact that that was most important to the State to prove, namely, that the threat had been made by appellant, and asking the witness if he had made that statement and if it was true, was, we think, calculated to impress the jury with the view that the court favored the State. The case of Looney v. People, 81 Ill. App., 370, was one in which the court examined a witness upon the issue of reputation. The court says: "It was at least a

debatable question whether some of these interrogatories should not have been modified." The court, criticising and holding improper the proceeding, said: "We concede to every trial judge a wide latitude in protecting those who are defenseless from improper proof and from assaults by opposing counsel, and also in putting questions which will bring out the truth upon points not rendered sufficiently clear by the examination of counsel; but great care should be taken to exercise this power only when necessary, and then in such a way as not to indicate any bias of the court for or against either party, and so as to not create any apprehension in the mind of either party, or of counsel, that the court is taking sides before the jury. The subject is fully discussed, and the power of the court and the limitations thereon stated in Dunn v. People, 172 Ill., 582, and page 595 of that opinion is fairly applicable to this case."

In our judgment the bill of exceptions shows that the trial judge fell into error in permitting the State's attorney to cross-examine the State's witness in the manner indicated by the bill and in his own cross-examination of the witness.

For these errors and that heretofore pointed out, the judgment of the lower court is reversed and the cause remanded.

*Reversed and remanded.*

PRENDERGAST, JUDGE, absent.