John James v. The State.

No. 5521.   Decided February 4, 1920.

Rehearing denied March 10, 1920.

1.—Murder—Charge of Court—Limiting Testimony—Rule Stated.

It is proper to limit evidence which is competent for impeachment alone and which is susceptible to use by the jury against the accused for some other purpose. Following: Branch v. State, 15 Texas Crim. App., 96, and other cases, but in framing such charge it must not be on the weight of the evidence and must not mislead the jury by an erroneous construction. Following: Stull v. State, 47 Texas Crim. Rep., 549, and other cases.

2.—Same—Case Stated—Charge of Court—Limiting Testimony.

Where, upon trial of murder, there was no necessity for placing any limitation upon the testimony of a certain State's witness as to any of the witnesses named in the charge of the court unless it be two certain witnesses, there being a total want of evidence upon which to base the charge in question so far as it related to the defendant and to his most important witnesses, and its tendency being to cause the jury to disbelieve them, the same was reversible error. Following: Dobbs v. State, 57 Texas Crim. Rep., 55, 121 S. W. Rep., 859.

3.—Same—Evidence—Motive—Bill of Exceptions—Practice on Appeal.

Where, upon trial of murder, a witness for the State testified, not in response to any question, that the information of the draft board was that a bribe had been offered to secure the defendant's classification, the same was inadmissible, however, the bill of exceptions not being specifically framed, there was no reversible error.

4.—Same—Evidence—Tracks—Rule Stated.

The rule with reference to the introduction of evidence of tracks requires that the witness identify the tracks by something more than his mere conclusion, but where the objection to this class of evidence related rather to its weight than its admissibility there was no reversible error.

5.—Same—Evidence—Re-examination—Impeachment of Own Witness.

Where, upon trial of murder, the State's counsel in his inquiry of one of his own witnesses on redirect examination exhibited to her a certain document containing her formal testimony, and asked her if she did not therein make a certain statement, and this did not come within the rule which permits the refreshing of the witness' memory the same should not have been permitted; however, there being no conflict in the statements of the witness, there was no reversible error. Following: Spangler v. State, 41 Texas Crim. Rep., 430, and other cases.

### 6.—Same—Evidence—Imputing Crime to Another.

Where, upon trial of murder, testimony was introduced that a certain person other than defendant had threatened the life of the deceased which came from witnesses who claimed to have heard the threats made, the same was admissible, but declarations by the deceased that this same person and others were hostile to him were properly rejected. Following: Hodge v. State, 64 S. W. Rep., 242.

### 7.—Same—Evidence—Motive—Bill of Exceptions.

Where, upon trial of murder, the defendant objected to certain testimony to the effect that at a certain time before the homicide there had been a mass-meeting, the object of which was to run the deceased out of the country because he was a law-breaker, but the bills of exception were defective in not being specific enough, there was no reversible error.

### 8.—Same—Temporary Insanity—Charge of Court.

Where, upon trial of murder, the evidence did not raise the issue of temporary insanity there was no error in the court's failure to charge thereon.

### 9.—Same—Rehearing—Invited Error—Charge of Court.

While it may be admitted that the defendant invited error in requesting the court to limit the testimony of certain State's witnesses, on the mistaken assumption that the same was impeaching, yet this did not condone the error referred to in limiting testimony of other witnesses over defendant's specific objection, especially with reference to the testimony of the defendant himself.

### 10.—Same—Objections to Charge—Article 735 C. C. P.—Rule Stated.

The object of the Legislature in article 735, C. C. P., was that the objections to the court's charge would be passed upon by the trial judge to let him know in what respect the charge was regarded as faulty, and where a substantial compliance is shown and its end practically accomplished the same is sufficient. Following: Railway v. Pemberton, 106 Texas, 466.

Appeal from the District Court of Robertson. Tried below before the Hon. W. C. Davis, judge.

Appeal from a conviction of murder; penalty, twenty-three years imprisonment in the penitentiary.

The opinion states the case.

*H. S. Morehead, J. L. Goodman, R. D. L. Killough,* and *Perry & Woods,* for appellant.—On question of irrelevant testimony: Guajardo v. State, 24 Texas Crim. App., 603.

On question of impeaching own witness: Ware v. State, 92 S. W. Rep., 1093; Perrett v. State, 75 Texas Crim. Rep., 94, 170 S. W. Rep., 316; Oates v. State, 67 Texas Crim. Rep. 488, 149 S. W. Rep., 1194.

On question of imputing crime to another: Dubose v. State, 10 Texas Crim. App., 230; Blocker v. State, 55 Texas Crim. Rep., 30, 114 S. W. Rep., 814.

On question of limiting testimony: Harden v. State, 57 Texas Crim. Rep., 401, 123 S. W. Rep., 613; Knight v. State, 55 Texas Crim. Rep., 243, 116 S. W. Rep. 56; Dobbs v. State, 57 Texas Crim. Rep.; 55, 121 S. W. 859.

On question of temporary insanity: Hierholzer v. State, 83 S. W. Rep., 836; Lawrence v. State, 70 Texas Crim. Rep., 506, 157 S. W. Rep., 480; Clayton v. State, 78 Texas Crim. Rep., 158, 180 S. W. Rep., 1089.

*C. M. Cureton,* Attorney General, *E. F. Smith,* Assistant Attorney General, *K. W. Gilmore,* County Attorney, *H. A. Bush,* for the State.—On question of tracks: Parker v. State, 80 S. W. Rep., 1008; Boyman v. State, 59 Texas Crim. Rep., 23, 126 S. W. Rep., 1142; Rucker v. State, 51 Texas Crim. Rep., 222, 101 S. W. Rep., 804.

On question of limiting testimony: Serna v. State, 105 S. W. Rep., 795; Ward v. State, 63 Texas Crim. Rep., 195, 140 S. W. Rep., 1109; McCoy v. State, 56 Texas Crim. Rep., 551, 120 S. W. Rep., 858; Vela v. State, 62 Texas Crim. Rep., 301, 137 S. W. Rep., 120; Needham v. State, 19 Texas, 332.

MORROW, Judge.—The deceased, Claude Whitehead, was called to the door of his dwelling early on the morning of the fourteenth day of June, and shot to death by some person who used an automatic shotgun loaded with buckshot. The wife of deceased testified that immediately after her husband was shot, she ran to the door and on the gallery, and saw a man with a gun in his hands whom she identified as the appellant. The State introduced other testimony to the effect that on the day preceding the homicide the appellant had been called before the Federal Draft Board in response to a notice that effort would be made to give him a less favorable classification in the selective draft; and that, being refused by the secretary of the board information as to the informant, indicated that he believed it to be the deceased.

The State advanced the theory that the appellant rode on horse-back from the home of his father some two miles to a point near the home of the deceased; that he dismounted and hitched his horse, going on foot across the field or pasture to the home of deceased, and thereafter returning to the point where his horse was hitched. This theory of the State is supported by testimony of witnesses that the appellant, during the night preceding the homicide, had visited the homes of several parties whose dwellings were en route from that of his father to that of the deceased; that he was drinking intoxicants, and that he made threats or expressed hostile intentions towards the deceased. The theory was also supported by testimony to the effect that there were certain horse tracks found in the road and at a point where it was claimed that the horse of the

assassin was hitched, and testimony to circumstances going to show that the appellant was riding on the road in question, and that he was seen doing so at a time and place which were coincident with the theory of the State. Evidence by the State was also introduced to the effect that there were discovered on the morning immediately after the homicide tracks made by some person wearing high-heeled boots, indicating that the person had gone from the point where the horse was hitched to the dwelling of deceased, and returned therefrom.

The appellant testified, and denied the assassination, and swore to facts showing an alibi, and in support of this theory he introduced a number of witnesses. He introduced evidence to the effect that the person riding horseback was another; and several of his witnesses testified negativing the fact that the appellant wore boots on the occasion mentioned, was in possession of boots, or in the habit of wearing them. He introduced some testimony showing motive and opportunity of others to commit the offense, and much testimony to impeach the wife of the deceased, both by showing a bad reputation for truth and veracity, and statements out of court contradictory of her inculpatory testimony.

In support of his theory of alibi, and to show that he was not wearing boots on the occasion of the homicide, the appellant used the testimony of his father, William James, his mother, Mrs. William James, and his brother, Riley James. He used testimony of the witness Robert Price to support his theory of alibi. To rebut the theory that he was wearing boots, he also used the witnesses George Castillo and Roy McBride. To prove contradictory state-ments of Pearl Whitehead, the wife of deceased, he used, among others, Frank Welch and George Miller. J. M. Reynolds gave testimony that a State witness named Henry Shirley had threatened to kill the deceased, it appearing from other testimony that Shirley was in proximity to the homicide at the time it took place. In rebuttal for the State, the witness McDonald testified that both the appellant and his brother Riley were in possession of boots about the time of the homicide. He testified that Reynolds and Robert Price had made statements out of court in conflict with their testimony on the trial. He also testified that the reputation of Price for truth and veracity was bad; and gave a similar state-ment with reference to George Miller and Frank Welch; and sup-ported the good reputation of Mrs. Pearl Whitehead for truth and veracity. The charge of the court touching the testimony of McDonald used the following language:

"Certain testimony of the witness Bob McDonald has been introduced as evidence in this case, and you will consider the same, if you consider it at all only in passing upon the credibility of the witnesses Ruff James, John Madden, George Costello, Roy McBride, Wm. James, Mrs. Wm. James, Riley James, Frank Welch, George

Miller, Robert Price, J. M. Reynolds, and the defendant, John James." The appellant duly made and reserved an exception to this paragraph containing the following language:

"Defendant objects and excepts to all that portion of the Court's revised charge, wherein the court undertakes to limit the testimony of the witness, Bob McDonald, for the reason that the said instruction relating to the testimony of said witness is wholly inapplicable to the facts in this case; that it is misleading, confusing, and is calculated to lead the jury to consider said testimony in a manner wholly unauthorized under the law as applied to the facts in this case, and directs the jury to consider the testimony of the said witness, Bob McDonald, in passing upon the credibility of certain witnesses whose testimony could not be affected or impeached by the testimony of the said Bob McDonald."

We are impressed with the view that in refusing to amend his charge in response to this exception, the learned trial judge inadvertently fell into error. It is proper to limit evidence which is competent for impeachment alone, and which is susceptible to use by the jury against the accused for some other purpose. Branch v. State, 15 Texas Crim. App., 96, and other cases in Vernon's Texas Crim. Statutes, vol. 2, p. 441, note 31; Coker v. State, 35 Texas Crim. Rep., 57; Wilson v. State, 37 Texas Crim. Rep., 373, and other cases cited in White's Texas Code Crim. Procedure, p. 529. In framing such a charge, the legal restrictions against charging on the weight of the evidence, and against misleading the jury by an erroneous construction, must be observed. Stull v. State, 47 Texas Crim. Rep. 549; Benson v. State, 54 Texas Crim. Rep., 12; Cavaness v. State, 45 Texas Crim. Rep., 211; McCleary v. State, 57 Texas Crim. Rep., 139; Taylor v. State, 50 Texas Crim. Rep., 562; and other cases cited in Branch's Annotated Texas Penal Code, p. 122, sec. 190.

The necessity for placing any limitation upon the testimony of the witness McDonald is by no means clear as to any of the witnesses named in the charge, unless it be the witness Reynolds and Price.

The testimony of the witness McDonald with reference to the reputation for truth and veracity of the several witnesses mentioned by him required no limitation, for the reason that it was usable for no purpose other than as affecting the credibility of the witnesses. His testimony relating to the witness Riley James simply contradicted the witness, and did not impeach him. James claimed that neither he nor his brother had boots; McDonald claimed that they did have boots. This was not impeaching testimony, but presented a conflict for the solution of the jury. Wasson v. State, 3 Texas Crim. App., 474. As to the other witnesses named in the charge, McDonald's testimony is in no sense impeaching, and not even in conflict. If their testimony was true, the State's witness

Pearl Whitehead was mistaken in her identification of the slayer of her husband. The court was not warranted in instructing the jury that McDonald's testimony could be considered as affecting their credibility. McDonald having given no testimony touching these witnesses, the occasion for giving a charge calling attention to his testimony did not arise. The same error appears in Hardin v. State, 57 Texas Crim. Rep., 407. The charge was particularly calculated to injure the appellant in that part of it in which the jury was given to understand that the testimony of McDonald bears upon the credibility of the appellant, John James. There is nothing in McDonald's testimony which is in the nature of impeaching testimony against the appellant. He did not even testify upon the subject of whether he was wearing boots or not, but did insist in his testimony that he did not shoot the deceased, and was not present, and therefore was not the man whom Mrs. Pearl Whitehead claims to have seen with a gun in his hands immediately after the fatal shots were fired. The testimony of the appellant, therefore, and that of Mrs. Pearl Whitehead are in direct opposition to each other. The only testimony of McDonald on the subject of Mrs. Pearl Whitehead is that she bore a good reputation for truth and veracity. If the jury drew the inference that this was impeaching testimony against the appellant, it would tend to discredit him and support her upon the vital issue in the case. There being a total want of evidence upon which to base the charge in question so far as it relates to the appellant and to his most important witnesses, and its tendency being to cause the jury to disbelieve them, we are constrained to the view that the matter presented is of such consequence that it requires a reversal of the judgment. Dobbs v. State, 57 Texas Crim. Rep., 55, 121 S. W. Rep., 859. The same vice appears in the paragraph of the charge relating to the evidence of the witness Bob Pilgreen.

The record of the evidence is voluminous, and there are many bills of exceptions, many of them relating to matters which are not likely to occur again. A witness who was the secretary of the draft board made a voluntary statement, not responsive to any question asked him, to the effect that the information of the board was that a bribe had been offered to secure the appellant's classification. Attention is called to the fact that the objection to this, or request to exclude it, was not framed in a specific manner, and it is possible that in the way the matter is developed in the record, no reversible error was committed in this respect. The statement of the witness, however, being obviously harmful and irrelevant should not have been permitted to remain in the record against the protest of the appellant.

The rules with reference to the introduction of evidence of tracks are well defined, and require that the witness identifying them do so by something more than his mere conclusion that they are the

same tracks. As the bill is prepared in the instant case, it is not clear to us that this rule was violated. The witness said: "The tracks I saw at the mouth of the lane that led up to the Whitehead house were large horse tracks. The tracks that led off down there looked like the very same tracks, and were large tracks." We think the objection to this evidence relates rather to its weight than its admissibility.

The prosecuting officers, we think, offended against the rule which prohibits, except under certain circumstances, cross-examination and impeachment of his own witness. In his inquiry of Mrs. Welch on redirect examination he exhibited to her a certain document containing her former testimony, and asked her if she did not therein make a certain statement. We do not think the transaction comes within the rule which permits the refreshing of a witness' memory. This witness claimed that her memory was clear, and the use made of her former testimony smacks rather of an effort to get that before the jury than to refresh her memory touching the real occurrence. Sangler v. State, 41 Texas Crim. Rep., 430; McLin v. State, 48 Texas Crim. Rep., 551; Anderson v. State, 83 Texas Crim. Rep., 261, 202 S. W., 944. In this instance, however, we would not be disposed to order a reversal upon this ground for the reason that there was a failure to develop any conflict in the two statements of the witness.

There are a number of bills of exceptions directed to the action of the court in the admission of evidence tending to show that other persons, who were near at hand at the time of the homicide, had a motive to destroy the life of the deceased. Some of this testimony was admitted in evidence, some of it was excluded, and some of it the court after excluding it changed his view and offered to admit it. Testimony of this character, in a case where the State relies upon circumstantial evidence, is regarded as appropriate testimony. DuBuse v. State, 10 Texas Crim. App., 230, and annotations thereof in Rose's Notes of Texas Crim. Reps., vol. 5, p. 175; Taylor v. State. 81 Texas Crim. Rep., 359, 195 S. W. Rep., 1147. The evidence by which the probability that another committed the offense may be established, however, must be legal evidence; and this, generally speaking, is not the hearsay declarations of the deceased or others, unless they amount to a confession of guilt. Blocker v. State, 55 Texas Crim. Rep., 32. In the instant case, the proof that Shirley had threatened the life of deceased, coming from witnesses who claimed to have heard the threat made, was properly received; but declarations by the deceased that Shirley and others were hostile to him were properly rejected. Hodge v. State, 64 S. W. Rep., 242; Wharton, Cr. Ev., p. 1739.

There was offered in evidence some testimony to the effect that in 1914 there had been a mass meeting, the object of which was to run the deceased out of the country because he was a law breaker.

The bills of exceptions touching this matter, and many others to which we have adverted in general terms, are not sufficiently specific in disclosing the nature and relevancy of the testimony offered for us to determine with accuracy the merits of the contention. We will say this, if it appeared that this meeting took place and had a specific application to the deceased, and was accompanied by other evidence showing that the participants were in such proximity to the homicide as to afford them opportunity to have committed it, that the evidence should be received. Otherwise, it should be rejected, unless it should become admissible as bearing upon the motive or animus of some witness in the case.

We do not find in the record evidence rendering it encumbent upon the court to instruct the jury on the issue of temporary insanity resulting from the recent use of intoxicating liquors.

For the error pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

ON REHEARING.

March 10, 1920.

MORROW, JUDGE.—We think the fact that the appellant invited error in requesting the court to limit the testimony of the State witnesses Mrs. Hobbs, Bob Pilgreen and Mrs. Cobb, on the mistaken assumption that this testimony was impeaching and required limitation, would not condone the error referred to in the original opinion. Appellant having requested the court to limit the testimony of the witnesses named above, of course could not complain that it was done. This estoppel, however, could not be extended, so that it would embrace a limitation of the testimony of other witnesses, done over the express specific objection of the appellant. But even if such were the rule, it would not cure the error which we endeavored to point out in the original opinion in instructing the jury that the testimony of the witnesses McDonald might be considered for the purpose of impeaching the testimony of the appellant given in his own behalf. Nor do we think that the exception made to the court's charge was inadequate to call the court's attention to the fact that the appellant complained of the charge quoted in the original opinion, and referring to the testimony of the witness Bob McDonald. The charge expressly directed the attention of the jury to the consideration of McDonald's testimony as bearing upon the credibility of the appellant, naming him. The exception was directed at the entire charge limiting the testimony of McDonald. It gave various reasons for objecting to it, among them that: "It directs the jury to consider the testimony of said witness Bob McDonald in passing upon the credibility of cer-

tain witnesses whose testimony should not be affected or impeached by the testimony of said McDonald.'' One of the witnesses referred to in the court's charge in question was the appellant John James. To declare that the exception was not specific to advise the trial judge that the appellant objected to the charge mentioned, and that the objection included the reference in the charge to the impeachment of the appellant, would give the statute requiring exceptions to the charge °before it is read to the jury an effect more restrictive than is warranted by its language.

In writing the statute, Article 735, C. C. P., the Legislature had in mind that the objections to the charge would be passed upon by the trial judge acquainted with the facts of the case and the law applicable thereto, and the terms in which the charge prepared by him was framed. The objects sought were to let the trial judge know in what respect the accused regarded the charge as faulty, to afford opportunity to correct it, and to make unavailable to the accused objections to the charge not made at the trial. These in the instant case, we think, were satisfied. The particular paragraph of the charge assailed was pointed out, and the objections thereto distinctly specified within the meaning of the statute. Clarendon v. McClellan, 86 Texas, 192, and annotations thereof Rose's Notes on Texas Reports, vol. 4, p. 494. The statute, should not be given a construction so technical as to deny the right of review on appeal where a substantial compliance is shown and its end practically accomplished. Railway v. Pemberton, 106 Texas, 466.

The motion is denied.

*Overruled.*