James D. SMITH, Appellant,

v.

The STATE of Texas, Appellee.

No. 49884.

Court of Criminal Appeals of Texas.

Dec. 3, 1975.

Rehearing Denied Jan. 9, 1976.

Marion T. Carson, San Antonio, for appellant.

Ted Butler, Dist. Atty., Charles T. Conaway, John L. Quinlan, III, and Douglas C. Young, Asst. Dist. Attys., San Antonio, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for murder with malice. Punishment was assessed by the court at twenty years.

Teddy DeHaven testified that appellant shot Walter Norman on September 15, 1972. DeHaven also testified that he and appellant took Norman's body to Canyon Lake in Comal County. Norman's body was found floating in the lake by a fisherman. The sufficiency of the evidence is not challenged.

Appellant contends, among other things, that there was jury misconduct because of a discussion of his failure to testify; that he was denied a speedy trial; that evidence was obtained by illegal searches.

We reverse the judgment of conviction because of the jury misconduct.

### Jury Misconduct

Appellant did not testify. Juror Hope Luhn testified about the jury's deliberations at the hearing on appellant's motion for new trial and the following occurred:

"Q. (Mr. Carson, Defense Counsel): Was there any discussion there concerning the defense not having—James Smith not taking the stand?

"A. (Juror Luhn) Yes.

"Q. What was that discussion, please?

"A. Well, Linda Andrade, she was for James Smith until—when he didn't take the stand, she said, 'Well, that just does it.'

"Q. And what did she mean? Did she go any further?

"A. She meant that he was guilty because he didn't take the stand.

"Q. Did anybody—

"MR. QUINLAN: I object to her testifying to what somebody else felt because she said something.

"THE COURT: I will sustain that.

"Q. Did she say anything else concerning the fact that James Smith did not take the stand?

"A. Well, several people said that that just proved he was guilty."

Appellant also introduced the affidavit of juror Miriam Barney which recites:

"There was some mention that there was a question as to James Smith's innocence due to the fact that he didn't take the stand."

The State introduced the affidavits of nine jurors. The affidavits describe generally the jury's deliberations but they do not state whether the jury discussed appellant's failure to testify. Each affidavit does contain a general statement that no jury misconduct occurred.

In *Brown v. State*, 475 S.W.2d 938 (Tex. Cr.App.1971), this Court wrote:

" 'The trial court is clothed with discretion in determining whether a new trial shall be granted on the ground that the jurors discussed the failure of the accused to testify in his own behalf, and an order denying the motion ordinarily will not be

disturbed if the court has determined, *on conflicting evidence*, that the alleged misconduct did not in fact occur, or that the statement was made casually or incidentally.' 41 Tex.Jur.2d, New Trial, Sec. 44, p. 136." (Emphasis Supplied)

The record contains no evidence which rebuts proof that the jury discussed and considered appellant's failure to testify. We hold that the overruling of the motion for new trial was an abuse of discretion. See *Davis v. State*, 159 Tex.Cr.R. 640, 266 S.W.2d 174 (1953); *Canales v. State*, 152 Tex.Cr.R. 198, 211 S.W.2d 950 (1948). Cf. *Ward v. State*, 520 S.W.2d 395 (Tex.Cr.App. 1975); *Brantley v. State*, 522 S.W.2d 519 (Tex.Cr.App.1975); *Broussard v. State*, 505 S.W.2d 282 (Tex.Cr.App.1974); *Powell v. State*, 502 S.W.2d 705 (Tex.Cr.App.1973); *Cleaver v. State*, 498 S.W.2d 945 (Tex.Cr. App.1973); *Garza v. State*, 368 S.W.2d 213 (Tex.Cr.App.1963); *Gauntt v. State*, 335 S.W.2d 616 (Tex.Cr.App.1960); *Cassell v. State*, 507 S.W.2d 228 (Tex.Cr.App.1974).

We discuss and overrule some of the contentions which might be raised in the event of another trial.

### Speedy Trial

The offense occurred on September 15, 1972. Appellant was arrested on October 4, 1972, and he was indicted on October 6, 1972. Appellant was released on bail on October 30, 1972. Appellant's motion for continuance was granted on November 3, 1972, and the case was set for trial on January 8, 1973. On January 8, 1973, the State's motion for continuance was granted, and the case was reset for March 12, 1973. On that date, the State requested a second continuance because of the absence of a witness, Vicki Phinney. At the hearing on the motion for continuance, Jack Stamps testified that Vicki Phinney was living in California. The trial court denied the State's motion for continuance.

A new indictment for the same offense was returned August 15, 1973. Trial was set for November 26, 1973, and the case was

passed until December 10, 1973. On that date, just prior to jury selection, the State requested a conference with the trial court in chambers. After the conference, the jury panel was dismissed. The case was then transferred to another court. Defendant was tried on January 28, 1974.

In *Davison v. State*, 510 S.W.2d 316 (Tex. Cr.App.1974), this Court wrote:

"The test for ascertaining whether the right to speedy trial has been denied is a balancing test based upon at least four criteria: (1) the length of the delay; (2) the reason for the delay; (3) the accused's assertion of his right; and (4) the prejudice to the accused. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Pete v. State*, 501 S.W.2d 683 (Tex.Cr.App.1973); *McKinney v. State*, 491 S.W.2d 404 (Tex.Cr.App.1973). During its present term, the Supreme Court of the United States has emphasized that none of these four criteria have 'talismanic qualities,' and, in particular, that a showing of prejudice is not sine qua non to demonstrating a denial of the right to speedy trial. *Moore v. Arizona*, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973)."

■ Approximately two years and four months elapsed from the date of arrest to trial. Such a delay is not, per se, a deprivation of the right to speedy trial, although it is a fact which calls for further consideration of appellant's claim. *Archie v. State*, 511 S.W.2d 942 (Tex.Cr.App.1974).

■ The reason for the delay was the absence of a material witness, Vicki Phinney. Jack Stamps, an investigator for the Bexar County District Attorney, testified at a hearing on March 13, 1973, that Vicki Phinney had moved to Oakland, California. Stamps also described his efforts to locate her. Stamps went to Oakland and interviewed her friends, relatives, employers and landlord. Her landlord told Stamps that she had gone to Italy and would not return for several months. After hearing this evidence the trial court denied the motion for

continuance. The indictment was dismissed.

Although the record is not fully developed, it appears that the State was unable to locate Vicki Phinney on the next scheduled trial date, December 10, 1973. The case was then transferred to another court where appellant was tried on January 28, 1974.

Vicki Phinney testified at appellant's trial that she heard gunshots and saw appellant shut the blinds to his house just after the shooting. She related that she saw appellant and a companion drive away from the house a few minutes after the shooting and saw appellant return a few hours later.

In *Barker v. Wingo*, supra, the Supreme Court of the United States wrote:

> ". . . A valid reason, such as a missing witness, should serve to justify appropriate delay."

The third factor to be considered is appellant's assertion of his right to a speedy trial. Appellant filed a motion for continuance on November 3, 1972, and the case was set for trial on January 8, 1973. Appellant opposed two motions for continuance filed by the State on January 8, 1973 and March 13, 1973. The trial court denied the State's second motion for continuance. Appellant's first written motion for speedy trial was filed on December 18, 1973. Appellant was tried on January 28, 1974.

■ The final factor is the prejudice which resulted from the delay. Although proof of "actual prejudice" is not required, the burden is upon appellant to make some showing of prejudice caused by the delay. *Archie v. State*, supra; *Arivette v. State*, 513 S.W.2d 857 (Tex.Cr.App.1974); *McCarty v. State*, 498 S.W.2d 212 (Tex.Cr.App.1973); *Harris v. State*, 489 S.W.2d 303 (Tex.Cr. App.1973); *Courtney v. State*, 472 S.W.2d 151 (Tex.Cr.App.1971). The Supreme Court in *Barker v. Wingo*, supra, identified the interests of the defendant which could be prejudiced by a delay: (1) oppressive pretrial incarceration; (2) anxiety and concern to the accused pending trial; (3) impairment of the defense.

Appellant was released on bail on October 30, 1972. Thus, he was not subjected to excessive pretrial incarceration. He alleges that he was unable to locate a witness, Robin Sue Scheibach. His attorney stated at a pretrial hearing that a subpoena had been issued for her to appear at the previous trial dates and that the last subpoena was returned unserved. At a pretrial hearing, appellant's attorney read into the record Scheibach's statement. It recited that she was with James Smith and Teddy Ray DeHaven from 7:00 p. m. to 10:30 p. m. on September 15, 1972, and that James Smith did not "act strange or different." Teddy Ray DeHaven testified that he and appellant picked up two girls at five o'clock on September 15, 1972 and that they let him out at Westwood Park at 6:45 or 7:00 p. m. Vicki Phinney testified that she saw appellant return to his house at approximately 7:00 p. m., September 15, 1972. We conclude that appellant failed to establish that his defense was impaired by the trial delay.

We find no denial of appellant's right to speedy trial.

### Circumstantial Evidence Charge

Appellant contends that the trial court erred in failing to charge the jury on circumstantial evidence.

■ Teddy DeHaven testified that he saw appellant shoot Walter Norman. DeHaven was an accomplice witness. In *Swift v. State*, 509 S.W.2d 586 (Tex.Cr.App.1974), this Court wrote:

> ". . . Where there is direct testimony, although it comes from an accomplice witness, a charge on circumstantial evidence is not required. *Bradley v. State*, Tex.Cr.App., 450 S.W.2d 847; *Blankenship v. State*, Tex.Cr.App., 448 S.W.2d 476; *Byrd v. State*, Tex.Cr.App., 435 S.W.2d 508; *White v. State*, Tex.Cr.App., 385 S.W.2d 397."

This contention is overruled.

*Evidence of Threats by Other People*

Appellant also contends that the trial court erred in excluding testimony concerning other persons who had threatened to kill the deceased.

Randy Sundan testified outside the presence of the jury that Sandra Norman threatened to kill Walter Norman approximately two months prior to the murder. Martha Tanner, an attorney, also testified that Norman told her that Sandra Norman and Robert Powers had threatened him. Sandra Norman denied threatening to kill her husband. Powers also denied threatening to kill Norman, although he admitted that he told Norman that he would "mess him up" after Norman threatened him.

Appellant relies on *James v. State,* 86 Tex.Cr.R. 598, 219 S.W. 202 (1920). In *James,* this Court wrote:

> "There are a number of bills of exception directed to the action of the court in the admission of evidence tending to show that other persons who were near at hand at the time of the homicide had a motive to destroy the life of the deceased. Some of this testimony was admitted in evidence, some of it was excluded, and some of it the court after excluding it changed his view and offered to admit it. Testimony of this character, in a case *where the state relies upon circumstantial evidence,* is regarded as appropriate testimony. . . ." (Emphasis supplied)

■ In *James,* there was no direct evidence of guilt. In the instant case, Teddy DeHaven was an eyewitness to the shooting. There was no evidence which connected Sandra Norman or Robert Powers with the killing. See *Wells v. State,* 134 Tex. Cr.R. 412, 115 S.W.2d 658 (1938). The trial court did not err in excluding the testimony.

*Search of the Home and Automobile of Deceased*

Officer McGrew testified that he searched a 1966 Chevelle automobile on September 27th. The car was parked at the house of Norman Powers at the time of the search. Sandra Norman testified that she asked Powers to move the car from the house appellant and the deceased rented to his house on September 18. McGrew found a four-way lug wrench in the trunk of the car. The wrench was bloodstained and had human hair on it.

■ The State contends that appellant does not have standing to challenge the search of the car because he alleged no possessory interest in the automobile and was not present at the time of the search. Appellant was not charged with an offense which included the possession of the automobile as an essential element of the offense. See *Jones v. United States,* 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958). Thus, appellant does not have standing to challenge the search of the car. *Brown v. United States,* 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); *Hutchinson v. State,* 509 S.W.2d 598 (Tex.Cr.App.1974); *Martin v. State,* 401 S.W.2d 831 (Tex.Cr.App.1966); *Thomas v. State,* 493 S.W.2d 957 (Tex.Cr. App.1973).

Officer McGrew testified that Sandra Norman, wife of the deceased, called and asked him to meet her and her father, Roy Smith, at a coffee shop on the evening of September 18, 1972. Smith, Norman and McGrew went to a house located at 430 Crestfield Avenue in San Antonio which had been rented by appellant and the deceased. Sandra Norman and Smith entered the house through a broken window. They then unlocked the front door for Officer McGrew. McGrew briefly searched the house but found nothing. McGrew testified that Sandra Norman consented to the search of the house.

On September 27 Officer McGrew returned to the house with Roy Smith. Smith gave a key to the house to McGrew. He searched the house again and took some bloodstained rags, a .38 caliber bullet and a gun box.

Sandra Norman testified that she and the deceased were separated on the date of the offense. She filed a suit for divorce approximately two and a half months prior to the offense. The divorce case was pending on the date of the offense.

■ The Supreme Court of the United States recently reaffirmed the constitutional validity of third-party consent searches in *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974):

". . . These cases[1] at least make clear that when the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over *or other sufficient relationship* to the premises or effect sought to be inspected. . . ." (Emphasis supplied)

On the date of the search Sandra Norman was the community survivor. Therefore, she was entitled to possession and control of their community property in the house. Further, the deceased's interest in the lease of the house was also vested in Sandra Norman. See *Frazier v. Wynn*, 472 S.W.2d 750 (Tex.1971). She, therefore, had a "sufficient relationship to the premises and effects" to consent to the search of the house. See also *Burge v. State*, 443 S.W.2d 720 (Tex.Cr.App.1969); *Swinney v. State*, 529 S.W.2d 70 (1975); *United States v. Lawless*, 465 F.2d 422 (4th Cir. 1972); *McCravy v. Moore*, 476 F.2d 281 (6th Cir. 1973). Her consent to search the house on September 18 carried with it the implicit consent to search again on the 27th. See *Brown v. State*, 475 S.W.2d 938 (Tex.Cr.App.1972), where this Court held that officers had a right to enter a house after the first entry for further investigation, and *Corbett v. State*, 493 S.W.2d 940 (Tex.Cr.App.1973). There was testimony that Sandra Norman

left a key with her father who gave it to Officer McGrew. See *Carlton v. State*, 111 Fla. 777, 149 So. 767 (Fla.1933).

■ The State contends that appellant abandoned the house prior to the seizure of the gun box, rags and bullet.

"Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts. * * * All relevant circumstances existing at the time of the alleged abandonment should be considered. * * * The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search. . . ." *United States v. Colbert*, 474 F.2d 174 (5th Cir. 1973).

Officer McGrew testified that he met with appellant, appellant's father and appellant's lawyer a few days after the offense. During that meeting appellant told McGrew that he had moved out of the house on September 18. Alfonzo Lopez, the owner of the house, testified that appellant moved out of the house and was living with his parents. Sandra Norman testified that she had spent the night in the house with her husband on several occasions. She also testified that appellant's property was not in his room on the date she consented to the search of the house.

We conclude that the trial court had sufficient evidence to conclude that appellant abandoned the house prior to the seizure of the gun box, rags and bullet. See also *Cherry v. State*, 488 S.W.2d 744 (Tex.Cr. App.1972), cert. denied, 411 U.S. 909, 93 S.Ct. 1538, 36 L.Ed.2d 199; *Lucas v. State*, 368 S.W.2d 605 (Tex.Cr.App.1963), cert. de-

---

1. *Frazier v. Cupp*, 394 U.S. 731, 740, 89 S.Ct. 1420, 1425, 22 L.Ed.2d 684 (1969); *Coolidge v. New Hampshire*, 403 U.S. 443, 487–490, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

nied, 375 U.S. 925, 84 S.Ct. 271, 11 L.Ed.2d 167; *Gaskin v. State*, 365 S.W.2d 185 (Tex. Cr.App.1963); *United States v. Kress*, 446 F.2d 358 (9th Cir. 1971); *United States v. Edwards*, 441 F.2d 749 (5th Cir. 1971).

Because of the jury misconduct, the judgment is reversed and the cause is remanded.