**Arturo E. BATRES, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 04–85–00450–CR.**

Court of Appeals of Texas,
San Antonio.

Feb. 27, 1987.

Gerald H. Goldstein, Ralph A. Lopez (on appeal), Goldstein, Goldstein & Hiley, San Antonio, for appellant.

Amando Abascal, III, Dist. Atty., Eagle Pass, for appellee.

Before CADENA, C.J., and CANTU and REEVES, JJ.

OPINION

REEVES, Justice.

This is an appeal from a conviction of the offense of sexual assault. A jury found the appellant guilty and the court assessed punishment at 11 years' confinement in the Department of Corrections.

The appellant chose not to testify. During deliberation, but before discussing the evidence, the jury took a preliminary poll. Ten voted guilty and two voted not guilty. It is uncontroverted that Batres' failure to testify was discussed by the the jury during its deliberation. It is also uncontroverted that during the discussion, neither the presiding juror nor any other juror cut off the discussion or cautioned the group that such discussion was forbidden. At the hearing on Batres' motion for mistrial, four jurors were called to testify. Three of them stated that Batres' failure to testify was discussed.

Juror Roman testified, in pertinent part:

[Attorney for Appellant]:

Q: Do you recall whether or not in the jury's deliberations that the jury discussed or commented upon defendant's failure to take the stand in this cause?

A: Yes, we did.

Q: Could you tell us briefly what the context of that discussion was?

A: That we didn't hear his side of the story. . . .

Q: Could you tell us how the discussion began? For example, who made the first comment about it?

A: One of the jurors, and I don't know which one exactly, they got off the subject as soon as we got in there, you know, that we didn't hear his side of the story.

Q: Did anyone else participate in the discussion?

A: Most all of us did.

Q: How long was the duration of the discussion?

A: It was about thirty or thirty-five or forty minutes. . . .

Q: How long do you say that it lasted?

A: The whole deliberation?

Q: The discussion about the defendant's failure to testify.

A: Well, about three minutes I guess.

Q: And would you tell us when the formal vote was taken as to the guilt or innocence of the defendant?

A: The formal vote.

Q: Yes.

A: It took about forty-five minutes after we got in there. . . .

Q: During this discussion [forty-five minute jury deliberation] did anyone say that an innocent person would have taken the stand, that if he had been innocent he would have taken the stand?

A: Yes.

Q: Do you recall that vividly?

A: Yes.

Q: Do you think that was an important factor in the decision?

A: I think so, yes it was.

Q: Were you one of the two persons who had originally voted for acquittal and then changed your mind?

A: I was one of them....

Q: So this discussion actually influenced you in voting for a guilty verdict?

A: Yes.

[Cross-examination by State]:

Q: And do I understand your testimony correctly in that you did not allow his failure to testify to play a part in your deliberations?

A: Yes I did say that.

Q: Pardon?

A: I did say that.

Q: You found him guilty under the evidence that was presented at the trial, right?

A: Yes.

Q: And the fact that he failed to testify, you did not consider that? You did not consider his failure to testify, and you did not hold that against him?

A: Well, it was mentioned but, no.

Q: But in your verdict you did find him guilty based on the evidence?

A: No, sir....

Q: And even though there may have been a mention about the defendant's failure to testify and the fact that you did not have the opportunity to hear his side of the story, was your verdict based on the evidence and not because he didn't testify?

A: The fact that there were so many comments made in the jury room, you know; but yes it was.

Q: It was based on the evidence and only on the evidence?

A: Yes.

[Redirect examination by Appellant's attorney]:

Q: Mr. Abascal made mention of the fact that the defendant failed to testify. Did you not testify that this discussion lasted for about thirty minutes?

A: After the informal vote....

Q: Did you not also testify that after this discussion was when you changed your mind and decided that you would vote in favor of a guilty verdict?

A: Yes.

Juror Covarrubias testified, in pertinent part:

[Questions by Appellant's attorney]:

Q: I would like to ask you a few questions about your deliberations. Do you recall any comments made during the jury deliberations regarding the defendant's failure to take the stand during the trial.

A: Yes there was.

Q: Could tell us briefly how that discussion started and how long it lasted?

A: Well, one of the jurors just mentioned it, and then everyone started talking that was mostly the main factor that was there, you know, and then they reached a verdict.

Q: Was this the main factor in the decision of the jury? Could you explain what you mean by the main factor?

A: Yes, it was like everyone was—it was something that was said by everyone and everyone discussed it there.

Q: Could you tell us some of the comments that were made?

A: Yes, some of them wanted to know why he didn't stand on the witness stand and, you know, it was something like that. Well, they said if he knew he was right, you know, then why didn't he stand up and speak for himself.

Q: From what you heard, and from all the comments that were made, do you think that it was an important factor in the decision?

A: In my opinion no.

Q: How long did this discussion last?

A: At least thirty-five or forty minutes ...

Q: —Do you remember at the beginning some people felt that he should be found innocent.

A: Yes, there were two.

Q: Did this discussion follow their expression of that opinion? ...

A: Yes....

Q: And after this discussion finished, is that when the vote occurred?

A: It was a little ways after it, yes.

Q: Was this a very important factor in the discussion?

A: Yes, it was....

Q: Ms. Covarrubias, did you use this discussion about his failure to take the stand to convince the two who were holding out for innocence?

A: Yes....

Q: This factor was a consideration in your decision, was it not?

A: Yes it was.

[Cross-examination by State]:

Q: What I mean is you found the defendant guilty is that correct?

A: Yes....

Q: In other words, when you were asked by Ms. Munez whether the reason you found the defendant guilty was because the defendant did not testify, you said that it did not play a significant factor in your decision is that right?

A: Right.

Q: And that you don't know about any other jurors but you know it did not play any significant factor in your decision right?

A: Right.

Q: So it wasn't a big factor in your decision is that right?

A: It wasn't at all.

[Re-direct Examination by Appellant's attorney]:

Q: Miss Covarrubias do you think that if the defendant had testified that your decision might have been different.

A: I could have changed....

Q: Was the defendant's failure to testify a consideration in your decision to convict?

A: Yes.

Juror Duque testified, in pertinent part: [Cross-examination by Appellant's attorney]:

Q: Ms. Duque, do you recall several jurors talking about the defendant's failure to take the stand during the deliberations?

A: About two or three.

Q: What comments were made in that discussion?

A: Well when the jurors, you know, went back there one of the jurors said that she would have liked for the defendant to take the stand because a lot of questions were left unanswered. Then about two or three more jurors joined and said that yes, they would have liked for the defendant to take the stand.

Q: Did anyone say whether their opinion might have been changed if he had taken the stand?

A: No, no, it was only that one juror who brought that up. She said that she still wasn't—that she hadn't made her decision yet.

Q: Did this occur prior to the formal vote being taken?

A: Prior to the formal vote, yes.

In *Smith v. State*, 530 S.W.2d 827 (Tex. Crim.App.1975) the court stated:

The trial court is clothed with discretion in determining whether a new trial shall be granted on the ground that the jurors discussed the failure of the accused to testify in his own behalf, and an order denying the motion ordinarily will not be disturbed if the court has determined, on conflicting evidence, that the alleged misconduct did not in fact occur, or that the statement was made casually or incidentally.

*Smith,* 530 S.W.2d at 829–30. *See also Nacol v. State,* 590 S.W.2d 481 (Tex.Crim. App.1979), and *Davis v. State,* 266 S.W.2d 174 (Tex.Crim.App.1953). Although the jurors' testimony conflicts as to the discussion's effect, it is apparent that the jury thoroughly discussed the appellant's failure to testify. In *Davis,* the Court of Criminal Appeals held that the trial court abused its discretion in not granting a new trial where there was evidence of repeated discussions made during jury deliberation on the failure of the accused to testify.

We hold that the trial court abused its discretion in overruling appellant's Motion for New Trial.

The judgment of the trial court is reversed and the cause remanded for new trial.

CADENA, Chief Justice, dissenting.

The testimony at the motion for new trial raised only a fact issue as to whether the improper jury discussion was merely a passing reference and whether it influenced the outcome of the deliberations.

The evidence that an improper jury discussion took place is uncontroverted. However, evidence of the length and significance of the discussion is contradictory. During her testimony, juror Roman testified that the improper discussion lasted "three or four minutes" and contradicted herself as to whether appellant's failure to testify affected her vote. Juror Covarrubias also presented contradictory testimony about the effect of the improper jury discussion.

Juror Duque stated that "two or three of the jurors" discussed appellant's failure to testify but stated that no votes were changed as a result:

Q: Did anyone say whether their opinion might have been changed if he had taken the stand?

A: No, no it was only that one juror who brought that up. She said that she still wasn't—that she hadn't made her decision yet.

Where there is conflicting evidence, the trial court's refusal to grant a motion for new trial is not an abuse of discretion. *Carrillo v. State,* 566 S.W.2d 902, 913 (Tex. Crim.App.1978).

I would affirm the judgment of the trial court.