**Ross Wayne NIX, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–87–019 CR.**

Court of Appeals of Texas, Beaumont.

May 4, 1988.

**350**

Steve Hebert, Steve Hebert and Associates, Baytown, for appellant.

Michael R. Little, Dist. Atty., and Jerry E. Andress, First Asst. Dist. Atty., Liberty, for appellee.

## OPINION

BROOKSHIRE, Justice.

Appellant was convicted by a jury of the murder of Raymond Garner. Appellant was then sentenced to life imprisonment by the jury. A $10,000 fine was assessed.

Appellant's appeal is based upon six "Grounds of Error". Nix argues that, at the punishment stage, the introduction of his conviction for attempted aggravated robbery in Colorado was error because that conviction was on appeal in Colorado and, hence, was not final. Nix had pleaded guilty to the offense of attempted, aggravated robbery in Colorado after which his punishment was assessed at seven years confinement. This matter is in the record by way of Appellant testifying outside the presence of the jury for the purpose of determining the admissibility of the Colorado conviction. Nix testified that he had heard from his court-appointed lawyer that his case was on appeal and he also testified, generally, that from his own knowledge his case was on appeal. Nix swore that his plea agreement or plea bargain was that he would be assessed two years confinement in the Colorado penitentiary

and that, if the trial judge had assessed only two years, no appeal would be pending. Nix swore that, if he had been assessed two years, he would have served the same without an appeal.

By a penitentiary packet, out of Colorado, the State showed that Nix had been charged with aggravated robbery and that *the final disposition thereof* was seven years confinement. The judgment of conviction, the sentence and the order to the sheriff (Mittimus) were in the prison pack.

■ *TEX.CODE CRIM.PROC.ANN. Art. 37.07, Sec. 3* (Vernon 1981 and Vernon Supp.1988) authorizes the State to introduce evidence of prior criminal records of an accused in criminal cases, after a finding of guilty in a bifurcated trial. *Art. 37.07, Sec. 3(a)* contains this relevant sentence:

"(a) ... The term prior criminal record means a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged."

When the State introduces correct, certified copies of a judgment of conviction and sentence, which appear to be facially regular and final, then the State has made out a prima facie case demonstrating prior criminal records, prior criminal final convictions and final conviction material. This the State did in the case subjudice. After this prima facie showing, the burden of going forward and the burden of proof, then, is placed upon the accused to produce evidence demonstrating irregularity, infirmities or lack of finality. *Acosta v. State,* 650 S.W.2d 827 (Tex.Crim.App.1983); *Tucker v. State,* 689 S.W.2d 235 (Tex.App.—El Paso 1985, pet. ref'd). Under this record, it is clear that the burden was placed upon the Appellant herein to produce evidence attacking the finality of the Colorado decree. *Diremiggio v. State,* 637 S.W.2d 926 (Tex.Crim.App.1982); *Williams v. State,* 596 S.W.2d 862 (Tex.Crim.App.1980). Appellant failed in his burden.

■ Appellant testified that the Colorado conviction was on appeal. In *Pena v.*

*State,* 669 S.W.2d 156 (Tex.App.—Dallas 1984, no pet.), the unanimous court held that the accused's oral statements, that the conviction was not final, was no evidence on that issue. *Pena, supra,* stands for the proposition that the accused must produce documentary evidence to rebut the State's prima facie case. A letter purporting to be from the accused's Colorado lawyer was hearsay as to the State. *TEX.R.CRIM. EVID. 801(a), (b), (c), (d).* In fact, the contents of the letter, itself, although the same are hearsay, merely state what the issues on appeal will be. This point is overruled.

■ As a second point of error, the Appellant argues that the prosecutor argued to the jury in a manner that amounted to a comment on the failure of the Appellant to testify at the guilt/innocent phase of the trial. We disagree.

The opening argument, by the State, simply exhorted the jury to have the courage to walk back into the courtroom and, holding their heads high, say to Ross Wayne Nix, that you, Nix, are guilty of murder. The State's prosecutor said:

"... I will tell him. Ross Wayne Nix, you are guilty of the murder of Raymond William Garner.

"THE DEFENDANT: Fuck you."

Then, while Appellant's counsel was making his argument, he took the position that the Appellant simply did not have *the physical ability or the mental strength to persuade* someone like Gates, who was also involved in the criminal episode, to do something that Gates did not want to do.

The State's closing argument was simply a response to the Appellant's profane and obscene exclamation and the argument of his counsel. The State's attorney, in the closing argument, was merely taking the position that the jury could consider his mental and physical abilities from their observance of the Appellant. The prosecutor remarked that Nix had the physical and mental ability *to glare at the State's attorneys,* that he had the *physical and mental ability to make rude remarks* in front of the jury and the judge and, hence, the jury should consider the totality of his physical

and mental abilities. It was not a comment, in anywise, by the prosecutor, on the failure of the Appellant to testify. Furthermore, no objection was made to the State's closing argument in this regard. The prosecutor's statements and arguments and remarks were strictly dealing with the Appellant's physical and mental abilities and nothing else. *Harris v. State,* 684 S.W.2d 687 (Tex.Crim.App.1984). Certainly it was an invited rebuttal argument. *Todd v. State,* 598 S.W.2d 286 (Tex.Crim. App.1980); *Alejandro v. State,* 493 S.W.2d 230 (Tex.Crim.App.1973); See and compare the interesting case of *Owen v. State,* 656 S.W.2d 458 (Tex.Crim.App.1983, En Banc).

We sanguinely conclude that the prosecutor's argument was not intended and certainly was not manifestly intended, nor was it of such a nature or character that the jury would naturally and necessarily take it to be a comment on the accused's failure to testify. We disallow this point.

■ As a third point of error, Nix contends that the lower court erred in sustaining Texas' objection to his argument, pontificating that Gates, a key witness for the prosecution, could have been sentenced to life in prison for armed robbery in Oklahoma and that the attorney for the Appellant should have been allowed to argue that matter to demonstrate to the jury that Gates, who was involved in the murder of Garner, traded a possible life sentence in the penitentiary for his testimony, but Appellant's lawyer readily admitted that he did not know what the Oklahoma law was. No proof was offered showing that the Oklahoma law is different from Texas law. Even so, Appellant's attorney proceeded to argue that armed robbery is a serious offense and that Marvin Gates was a convicted murderer, having pleaded guilty to the murder of Raymond William Garner. Gates was doing sixty years in the Texas Department of Corrections. This argument was simply not proper, considering the applicable and settled case law governing closing arguments in the trial of a criminal case. It is well-settled that a correct jury argument is that which summarizes the evidence and makes reasonable

and logical deductions or inferences from the evidence, that responds to the argument of the opposing attorney and, of course, maybe an oratorical plea for proper law enforcement. *McKenzie v. State*, 617 S.W.2d 211 (Tex.Crim.App.1981). *Alejandro v. State*, 493 S.W.2d 230 (Tex.Crim. App.1973). Both Texas and the defense counsel are to confine their arguments to the evidence, testimony and the record. Appellant's counsel was outside the record. *See Fuentes v. State*, 664 S.W.2d 333 (Tex. Crim.App.1984). Appellant had failed to lay the necessary predicate for this disallowed argument. Point 3 is denied.

The fourth point of error is that the evidence that was seized from a storage warehouse was inadmissible in evidence and that its admission was a violation of the *U.S. CONST., Amend. IV* and *TEX. CONST. Art. I, sec. 9* (1984). The evidence seized was in a storeroom. The storeroom was a short distance from the *apartment rented by Gates.* Gates was a co-actor in the "murderous" criminal offense. After the date of the principal indicted offense, the Appellant was later arrested on September 6th or 7th, in the State of Colorado. The killing occurred on August 16, 1984. Appellant was unable to return to either the apartment or the storeroom or warehouse; he had no intention to do so. When the police officer seized the evidence, he did so without a search warrant. We determine that the Appellant had no standing and had no reasonable expectation of privacy, either in the premises searched or in the property seized. *Gates leased the apartment* and *Gates leased the mini-storage warehouse.* There was no formal motion to suppress evidence and there was no formal hearing. The State's exhibit No. 40 was a photograph of the mini-warehouse with the door open. State's Exhibit No. 41 was a photograph of the floor of the mini-storage warehouse. These exhibits were objected to. The Appellant has the burden to establish standing and expectation of privacy. He failed to do so. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *Manry v. State*, 621 S.W.2d 619 (Tex.Crim.App. 1981). No apartment in the Mimosa Apartments (where Gates sojourned) was leased or rented to Nix. The manager of the apartment gave the officer permission to enter the warehouse, No. 130, at, and back of, the Mimosa Apartments. The lease for the apartment was only to Gates and his immediate family. Nix was not in his immediate family. The leasing of the mini-warehouse was only to Marvin Gates.

Appellant has not shown that he ever kept any of his personal property there. He has not shown that he had any control over that storage space. It is shown that the Appellant moved into Gates' apartment sometime in early August of 1984, about two weeks prior to the tragic murder. It is not clear whether Appellant was invited to move in (which is very doubtful) or whether he just appeared and presented himself and Gates acquiesced. The fact that Appellant may have lived as an invited, temporary guest of Gates or merely moved in and Gates did not expel him is inadequate to show standing.

But there is another cogent reason which demonstrates that the Appellant had no standing to object, nor any expectation, reasonable or otherwise, of privacy in the mini-storage facility. Gates was interviewed by John Stapleton, a law officer, concerning the killing of Garner. After that time, Gates talked with the Appellant and one Nelson Mooney. The record clearly demonstrates that after Gates had talked with Stapleton, he had a conversation with Nix, the Appellant, and one Nelson Wayne Mooney, pertaining to leaving the Liberty—Houston area; and all three did, in fact, leave and flee towards San Antonio. Then this flight extended further westward and northwestward into other states.

At the time of Gates' conversation with Stapleton, Gates knew that Stapleton was with the Liberty County Sheriff's Department and was actually investigating the death of Raymond William Garner. Shortly thereafter, Nix and Mooney took the van that had previously belonged to the victim and fled to San Antonio. Before leaving from Houston, the belongings of Gates and the belongings of Nix were put into the van

and they fled from Houston and from the apartment.

After Gates arrived at San Antonio, during his flight on his motorcycle, and after he had freshened up a bit, he, the renter or the lessee of the apartment, actually left San Antonio and fled through El Paso, through the State of New Mexico, and arrived finally at Phoenix, Arizona. He certainly had moved away and abandoned the apartment, as well as the mini-storage warehouse.

It is demonstrated, vividly, that neither Gates nor Nix had any intention to return to the Mimosa apartments. Nix fled from San Antonio through New Mexico to Colorado, where he was apprehended. *Villarreal v. State,* 708 S.W.2d 845 (Tex.Crim. App.1986). *Smith v. State,* 530 S.W.2d 827 (Tex.Crim.App.1975).

Abandonment involves the intent of the actors, but this intent may be inferred and deduced from words spoken, acts done, objective facts, engagement in flight and other relevant circumstances. After his complete abandonment and his long flight, as occurred in the case subjudice, Appellant could no longer retain an expectation of privacy with regard to either the apartment or the mini-storage facility. Neither did the fleeing Nix have standing. *United States v. Colbert,* 474 F.2d 174 (5th Cir. 1973). *See Cherry v. State,* 488 S.W.2d 744 (Tex.Crim.App.1972), cert. denied, 411 U.S. 909, 93 S.Ct. 1538, 36 L.Ed.2d 199 (1973). We will not sustain Points 3 and 4.

██ We think that the Appellant, in his next point, misapplies the rule that he is relying on. He relies on a rule that the declaration of a third party, admitting his guilt of the crime for which the accused is on trial, is generally inadmissible except under certain circumstances. However, the basis of inadmissibility is the rule against hearsay. *Ramirez v. State,* 543 S.W.2d 631 (Tex.Crim.App.1976), citing *McCormick and Ray,* Texas Laws of Evidence, Sections 1005 and 1006 (2d ed. 1956). It has been generally, but not consistently, held in the past that declaration against penal interests are excluded but, here, the statements made by, and the declarations made by, Marvin Gates were made in court, subject to cross-examination, and Gates only testified about matters that he personally knew and his own acts. It has been held *on unsound reasoning,* that confessions of a crime and other statements by a third person (which statements and declarations subjected the declarant to criminal liability) have, therefore, been rejected and ruled inadmissible. The hearsay rule applies to out-of-court statements that are tendered to prove the truth thereof. That is not our situation here. Gates was in the witness stand. In any event, there is an adequate protection against any impermissible peril by the right of cross-examination of the witness when he is in court testifying under oath. A statement of a declarant involving his own confession to a murder is certainly greatly against his interest, whether it be pecuniary, proprietary or penal interest. Outstanding legal writers and honored and celebated Justices of the United States Supreme Court have condemned this doctrine as being illogical, unsound in policy and unjust. Generally, these sound thinkers and analysts have characterized the rule as being *barbarous* in that it denies an innocent man of the opportunity to vindicate himself by the production of an authenticated confession made by the true culprit. *McCormick & Ray,* Texas Laws of Evidence, Sections 1005 and 1006 (2d ed. 1956). However, the rule does not apply to our case under this record. We conclude that, under *TEX.R.EVID. 803(24)* and *TEX.R.CRIM.EVID. 803(24)* the matter is laid to rest against Nix. Gates' in-court statements are simply not excluded by the hearsay rule. Again, our declarant was a witness, on the stand, subject to cross-examination and *sec. (24)* provides that:

"... A statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

Our record shows that there was an abundance of corroborating circumstances. The circumstances insure the trustworthiness of Gates' statements.

Furthermore, the Appellant made no objection at the time the challenged testimony was proffered. There is no fundamental error. There is no egregious harm. In fact, on cross-examination of Marvin Gates, the counsel for the defense inquired into the same subject matter and waived any possible objection of error. The rule is that where there is no objection to the prosecutor's questions or his remarks, then no error is preserved or presented for appellate review unless the error amounts to fundamental error. *McIlveen v. State*, 559 S.W.2d 815 (Tex.Crim.App.1977). *Beal v. State*, 520 S.W.2d 907 (Tex.Crim.App.1975). Certainly this accused was not deprived of a fair and impartial trial. This point of error is overruled.

 The last and sixth point of error is that the trial court erred in overruling Appellant's objection that the charge allegedly authorized a conviction on a ground said not to be in the indictment. By indictment, Nix was charged with intentionally and knowingly causing the death of Raymond William Garner, by shooting him with a firearm. The court, in its charge to the jury, properly included instructions pertaining to the law of parties. Nix objected to the court's charge on the law of conspiracy. The charge on the law of parties was pursuant to, and in accordance with, *TEX.PENAL CODE ANN. Art. 7.02(a)(1), (2)* and also *Art. 7.02(b)* (Vernon 1974). It is significant that the Appellant has cited no case law to sustain this alleged error. Under the indictment of this case and the charge of the court, *TEX.PENAL CODE ANN. Art. 7.02(a) and (b)* (Vernon 1974) were fully complied with. Under the present law, an accused who is a party to a criminal offense may be charged with the offense without the indictment alleging facts which make the accused a party and, therefore, criminally responsible for the conduct of another. And, if, during the trial, the evidence and the testimony support a charge on the law of parties, then the court may properly charge on the law of parties even though there was no such allegation of parties set forth in the indictment. *Rico v. State*, 707 S.W.2d 549 (Tex.

Crim.App.1983); *Pitts v. State*, 569 S.W.2d 898 (Tex.Crim.App.1978).

We squarely hold that the District Court correctly included an instruction on the law of conspiracy as the same is set out in *TEX.PENAL CODE ANN. 7.02(b)* (Vernon 1974). *Flores v. State*, 681 S.W.2d 94 (Tex. App.—Houston [14th Dist.] 1984) *aff'd* 690 S.W.2d 281 (Tex.Crim.App.1985).

Appellant's only argument, under this point of error, is that the court's charge on conspiracy was erroneous and that the error was calculated to injure Appellant's right to a fair trial. *TEX.CODE CRIM. PROC.ANN. Art. 36.19* (Vernon 1981). We disagree. We determine that this Appellant had a fair and impartial trial. *TEX. PENAL CODE ANN. Sec. 7.02* (Vernon 1974), in subsection (b) thereof, specifically lists conspiracy as one of the bases making a person criminally responsible for an offense actually committed by the conduct of another. Therefore, under *Sec. 7.02*, we sanguinely hold that conspiracy is a part of what is commonly called the law of parties and the court had a right and a duty under this record to charge on the same since the evidence amply raised conspiracy. A horrendous conspiracy is clearly proved. Simply stated, the carrying out of a conspiracy to commit a felony under *Sec. 7.02* of the Penal Code is one of the *bases for charging on the law of parties or charging under Sec. 7.02(b)*, that is, the law of conspiracy. It has been repeatedly and consistently held that, under an indictment, such as we have in this case, if the evidence raises the law of parties, that no error is committed by the trial court in charging the jury on the law of parties.

In *Flores v. State*, 681 S.W.2d 94, 97 (Tex.App.—Houston [14th Dist.] 1984), the court wrote:

"However, in this case, appellant was charged in the indictment with first degree murder, not felony-murder, nor conspiracy. The judge's instructions were therefore correct. The indictment made no reference to the offense of conspiracy; the jury was charged on the law of parties, and conspiracy was only incidentally defined therein. A trial court may

charge the jury on the law of parties even though there is no allegation in the indictment. *English v. State*, 592 S.W. 2d 949, 955 (Tex.Crim.App.1980)...." (Emphasis theirs)

It is important to note that, in *Flores, supra*, in the Court of Appeals' opinion, the instant Fourteenth District Court wrote [at page 97] that:

"The trial judge instructed the jury on the law of parties as contained in section 7.02 of the Penal Code, and then merely defined conspiracy as contained therein. Section 7.02(b) directs that all conspirators are guilty of the felony actually committed, and contains no provision for lowering the punishment."

The Appeals Court held that the trial judge had properly instructed the jury.

In the Court of Criminal Appeals' opinion, in *Flores v. State*, 690 S.W.2d 281, 282 (Tex.Crim.App.1985), it is written that the indictment, omitting the formal parts and the first count, reads thusly:

" 'the defendant, ARTHUR FLORES, did then and there intentionally and knowingly cause the death of an individual, Brenda Diane Greener Igo, by shooting the said Brenda Diane Greener Igo with a handgun.' "

The Court of Criminal Appeals further wrote that there was no allegation, in the indictment, that defendant, Flores, was a party to the commission of the murder.

Apparently, the Appellant, Flores, and Rogers had entered the Igo residence from the backyard and they were proceeding with their burglary plans when Brenda Diane Greener Igo unexpectedly returned home from the grocery store. Mrs. Igo came upon the two men in her own home and was shot. Mr. Flores testified at his trial. He denied he shot Mrs. Igo. However, there was other testimony from other witnesses that Appellant, Flores, took a pistol to the scene of the burglary. The trial court charged on conspiracy, which was approved, in my opinion, by the opinion of the Houston Fourteenth Court of Appeals. In turn, the Court of Criminal Appeals of Texas, at least I think, tacitly

approved by affirming the decision of the Court of Appeals.

We hold that charging on conspiracy is merely an incidental, inherent part to a charge on the law of parties. *Flores, supra*, was affirmed in *Flores v. State*, 690 S.W.2d 281 (Tex.Crim.App., en banc 1985).

The wording of the indictment in the *Flores* case and the wording in our case are remarkably similar as they relate to the objections made to the charge. The Court of Criminal Appeals affirmed the Court of Appeals and thereby approved of the charge, in the *Flores* case, on the law of parties, including the law of parties involved in a conspiracy. It is of paramount importance to note that in *Flores, supra*, 690 S.W.2d 281, 282, the Court of Criminal Appeals wrote:

"However, as to the appellant's final ground of error, the court below found that the appellant was convicted under the law of parties...."

This ground of error, in *Flores, specifically dealt with the charge of conspiracy without having the same pleaded in the indictment.* Hence, the Court of Criminal Appeals has placed its imprimatur on this, charging the jury on the law of conspiracy, when conspiracy is an inherent, integral part of the law of parties under *Sec. 7.02*, even though the conspiracy, as such, was not alleged in the indictment. Obedient to our high Criminal Appeals Court, we also squarely hold the same.

Furthermore, at the first stage, the jury found Nix "guilty of the offense of murder *as alleged in the indictment.*" Hence, the jury found Nix guilty under the law of parties. *Sec. 7.02(a).* The judgment and sentence below are affirmed.

AFFIRMED.