11th Court of Appeals
Eastland, Texas
Opinion
 
Alejandro Sandoval, III
            Appellant
Vs.                  No. 11-00-00096-CR — Appeal from Harris County
State of Texas
            Appellee
 
            The jury convicted appellant of murder and assessed his punishment at 30 years confinement. 
We affirm.
            In his third point of error, appellant argues that the evidence is factually insufficient to
support his conviction. In deciding whether the evidence is factually sufficient to support the
conviction, we must review all of the evidence in a neutral light favoring neither party to determine
if the verdict is so against the great weight of the evidence as to be clearly wrong and unjust. 
Johnson v. State, 23 S.W.3d 1 (Tex.Cr.App.2000); Clewis v. State, 922 S.W.2d 126
(Tex.Cr.App.1996). We review the fact finder’s weighing of the evidence and cannot substitute our
judgment for that of the fact finder. Cain v. State, 958 S.W.2d 404 (Tex.Cr.App.1997); Clewis v.
State, supra. Due deference must be given to the jury’s determination, particularly concerning the
weight and credibility of the evidence. Johnson v. State, supra; Jones v. State, 944 S.W.2d 642
(Tex.Cr.App.1996), cert. den’d, 522 U.S. 832 (1997). This court has the authority to disagree with
the fact finder’s determination “only when the record clearly indicates such a step is necessary to
arrest the occurrence of a manifest injustice.” Johnson v. State, supra at 9.
            Omar Lopez testified that on May 6, 1997, he and a co-worker were visiting his brother-in-law (the victim) and the victim’s girlfriend. Lopez testified that, while he was at the victim’s house,
someone knocked open the door, hitting him in the shoulder, and entered the house. Lopez stated
that appellant walked in the house, pointed a gun in his face, and told him to lie down on the floor. 
Lopez said that he covered his face with his hands but that he could still see appellant. Lopez
testified that a second person entered the house with a pistol and that the victim hit him on the hand,
knocking the pistol out of his hand. Lopez stated that he heard shots and then saw a “big cloud of
smoke and of powder.” Lopez testified that appellant shot the victim because appellant “was the
only person that was inside armed [at] that moment.”
            Lopez further testified that the men went outside and that he started to get up when appellant
came back into the house “jumping up and screaming.” At that time, Lopez heard more shots, and
he asked appellant not to kill him. Appellant left the house again, and Lopez got up and saw that the
victim was dead. 
            Irma Angela Gutierrez, the victim’s girlfriend, testified that she and the victim lived together
in a small house behind her aunt’s house. Gutierrez stated that, on the day of the offense, she was
at the sink washing dishes when someone forcefully entered the house and fired shots. Gutierrez
stated that two men came in the front door and that another man came through a sliding glass door
in the bedroom. Gutierrez said that all three men were carrying pistols. Gutierrez testified that the
first man who entered the house fired shots. Gutierrez later identified appellant as the first man to
enter the house. Gutierrez said that the three men left but that one came back and fired more shots. 
After the men left, Gutierrez called 911 and went to the victim who was unconscious. 
            The indictment alleged that appellant intentionally and knowingly caused the death of the
victim by shooting the victim with a firearm. The indictment also alleged that appellant intended
to cause serious bodily injury to the victim and caused the victim’s death by “intentionally and
knowingly committing an act clearly dangerous to human life...shooting the [victim] with
a...firearm.” The jury charge authorized the jury to convict appellant as a principal actor or as a party
to the offense. 
            The jury heard evidence that appellant entered the victim’s residence with a gun and fired
shots. Lopez identified appellant as the person who shot the victim. The jury is the sole judge of
the credibility of the witnesses and the weight to be given their testimony. TEX. CODE CRIM.
PRO. ANN. arts. 36.13 & 38.04 (Vernon 1979 and 1981). The jury views the demeanor of the
witnesses and can choose to believe all, some, or none of the testimony. Chambers v. State, 805
S.W.2d 459 (Tex.Cr.App.1991). After reviewing all of the evidence in a neutral light favoring
neither party, we hold that the jury’s verdict is not so against the great weight of the evidence as to
be clearly wrong and unjust. Appellant’s third point of error is overruled. 
            In his first point of error, appellant contends that his:
[R]ights to the protections of a grand jury and the due course of laws were denied
when the jury was allowed to convict him of a variant of felony murder despite the
fact that the indictment did not allege statutory felony murder.
 
The indictment alleged that appellant intentionally or knowingly caused the death of the victim by
shooting him with a firearm. TEX. PENAL CODE ANN. § 19.02(b)(1) (Vernon 1994). The
indictment further alleged that appellant intended to cause serious bodily injury to the victim and
committed an act clearly dangerous to human life causing the death of the victim. TEX. PENAL
CODE ANN. § 19.02(b)(2) (Vernon 1994). The jury charge authorized the jury to convict appellant
as a principal actor or as a party.
            The jury was charged on two theories of the law of parties pursuant to TEX. PENAL CODE
ANN. § 7.02(a) & (b) (Vernon 1994). Section 7.02(a)(2) provides that a person is criminally
responsible for the conduct of another if, “acting with intent to promote or assist the commission of
the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the
offense.” Section 7.02(b) provides that:
If, in the attempt to carry out a conspiracy to commit one felony, another felony is
committed by one of the conspirators, all conspirators are guilty of the felony actually
committed, though having no intent to commit it, if the offense was committed in
furtherance of the unlawful purpose and was one that should have been anticipated
as a result of the carrying out of the conspiracy.
 
Appellant argues that charging the jury on the law of parties pursuant to Section 7.02(b) actually
allowed the jury to convict him of felony murder under TEX. PENAL CODE ANN. § 19.02(b)(3)
(Vernon 1994) without being indicted for that offense. Appellant also argues that Section 7.02(b)
is inapplicable in murder prosecutions “because the Legislature, by enacting a more specific statute,
could not have intended for the codified felony murder statute to be circumvented or rendered moot.” 
            The trial court may charge the jury on the law of parties even though there is no such
allegation in the indictment. Montoya v. State, 810 S.W.2d 160 (Tex.Cr.App.1989), cert. den’d, 502
U.S. 961 (1991). The trial court may also charge the jury on the law of parties pursuant to Section
7.02(b) in a prosecution for murder where felony murder is not alleged in the indictment. See Nix
v. State, 750 S.W.2d 348 (Tex.App. - Beaumont 1988, no pet’n); Givens v. State, 749 S.W.2d 954
(Tex.App. - Fort Worth 1988, pet’n ref’d); Flores v. State, 681 S.W.2d 94 (Tex.App. - Houston [14th
Dist.] 1984), aff’d, 690 S.W.2d 281 (Tex.Cr.App.1985). We find that the trial court properly
charged the jury on the law of parties and that appellant was not denied the protections of a grand
jury. Appellant’s first point of error is overruled.
            In his second point of error, appellant contends that the trial court erred in admitting the
tainted in-court identification of him by Lopez and Gutierrez. Appellant filed a written motion to
suppress his out-of-court and in-court identification by one or more of the State’s witnesses. The
trial court held hearings out of the jury’s presence during the trial and subsequently denied the
motion. 
             An in-court identification is inadmissible when it has been tainted by an impermissibly
suggestive pretrial photographic identification. Loserth v. State, 963 S.W.2d 770 (Tex.Cr.App.
1998). The test is whether, considering the totality of the circumstances, "the photographic
identification procedure was so impermissibly suggestive as to give rise to a very substantial
likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377 (1968);
Loserth v. State, supra at 772.
            Appellant first argues that Lopez’s in-court identification was tainted because he was shown
a single photo of appellant two weeks before trial. Lopez testified out of the jury’s presence that he
was shown two groups of photos by the police on approximately June 4, 1997. Lopez stated that he
identified appellant from the photo spread and that he identified appellant as being the first person
to enter the residence on the day of the offense. Lopez further stated that no one suggested to him
which photo he should identify from the photo spread. Lopez testified that, at the time of the
offense, he saw appellant “perfectly.” 
            Lopez testified on cross-examination out of the jury’s presence that he was shown individual
pictures of appellant and the two other persons involved in the offense. However, on redirect
examination, Lopez stated that he was shown the photos about two weeks prior to trial by the
prosecutor and was asked to explain each person’s role in the offense. 
            Appellant next argues that Gutierrez’s in-court identification was tainted “by her many trips
to the courthouse to see [a]ppellant.” Gutierrez testified out of the jury’s presence that the police
showed her three groups of photos and that she was able to identify the three men who entered her
house on May 6, 1997. Gutierrez identified appellant as being one of the persons who entered her
house with a gun the day the victim was killed, and she stated that she was identifying him from her
memory of the events on May 6, 1997. She testified that she had “the images in [her] mind like if
it happened yesterday.”
            Gutierrez testified on cross-examination out of the jury’s presence that she went to the
courthouse three to five times because she was subpoenaed to appear. Gutierrez stated that the
detective told her to appear in court. Gutierrez said that she received letters telling her to come to
court and that she called the detective’s office. She said that there was no one in the office who
spoke Spanish and that she “tried” to use her English. Gutierrez further testified that, when she came
to court, appellant was not present. Gutierrez stated that neither the officers nor anyone else
suggested that she go to court so that she could see appellant in person. 
            Detective Alejandro Ortiz, Jr., with the Harris County Sheriff’s Department, testified out of
the jury’s presence that he showed Gutierrez three groups of photos and that she was able to identify
three people who were involved in the murder of the victim. Detective Ortiz stated that he never
called Gutierrez and asked her to go to the courthouse to view the suspects. Detective Ortiz said that
Gutierrez called him a number of times to inquire if she needed to be in court on a certain day and
that he advised her to contact the prosecutor of that court. Detective Ortiz further testified that the
prosecutor did not speak Spanish, so Gutierrez continued to contact him. Detective Ortiz testified
on cross-examination that Gutierrez told him that she went to the courthouse but that she did not say
that she saw appellant.
            The record does not support appellant’s argument that the in-court identifications were
tainted by impermissibly suggestive out-of-court identifications. There is no evidence of any
identification procedure which gave rise to a substantial likelihood of misidentification. Appellant’s
second point of error is overruled.
            The judgment of the trial court is affirmed. 
 
July 26, 2001                                                                          W. G. ARNOT, III
Publish. See TEX.R.APP.P. 47.3(b).                                     CHIEF JUSTICE
Panel consists of: Arnot, C.J., and
Wright, J., and McCall, J.